Sue AIDINOVSKI, SSN: 340–68–3650, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. 98 C 1458.

United States District Court, N.D. Illinois, Eastern Division.

Dec. 9, 1998.

Jan L. Kodner, Chicago, IL, for Plaintiff.

Carole J. Ryczek, Assistant United States Attorney, Ayrie Moore, Assistant Regional Counsel, Social Security Administration, Chicago, IL, for Defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, Senior District Judge.

Sue Aidinovski ("Aidinovski") seeks judicial review of a final decision of Commissioner of Social Security Kenneth Apfel ("Commissioner") denying Aidinovski's claim for disability insurance benefits under Social Security Act ("Act") §§ 216(i) and 223, 42 U.S.C. §§ 416(i) and 423.[1] As is usual in these cases, both sides now move for summary judgment under Fed.R.Civ.P. ("Rule") 56, with Aidinovski alternatively requesting a remand for a new hearing. For the reasons stated in this memorandum opinion and order, both motions for summary judgment are denied, but Aidinovski's alternative remand request is granted.

### Medical History

Aidinovski was born on December 28, 1964 and has a high school education. She worked as a legal secretary and a word processor most of her adult life until May 12, 1993 (R. 209), when she stopped working because of the onset of her asserted disability. Aidinovski based her disability claim on fibromyalgia,[2] chronic fatigue syndrome, left shoulder chronic tendinitis and gastritis (R. 47).

Aidinovski's medical treatment spans many years. For purposes of these motions, her relevant medical history began when she sought treatment for chronic left shoulder pain in 1991. After an arthroscopy, she was

---

**1.** All further statutory references will take the form "Section ___," using the Title 42 numbering rather than the Act's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § ___." Citations to the administrative record (the sole reference needed to decide the issues) will take the form "R. ___."

**2.** Fibromyalgia is also known as fibrositis.

diagnosed with tendinitis and synovitis of the left shoulder with fibrosis and subacromial bursitis, in addition to a touch of rheumatoid arthritis (R. 100, 101). Although she complained of chronic pain in the shoulder, the objective medical evidence (such as an MRI and the arthroscopy) was negative, failing to explain the severe pain she reported to her orthopedic surgeon (R. 99, 101). Aidinovski could not take anti-inflammatory pain medications for her shoulder because they caused her stomach problems (R. 100).

In October 1992 Aidinovski consulted a rheumatologist, Dr. Majid Serushan, who diagnosed her with fibromyalgia (R. 157, referring to R. 159–60). *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir.1996) (citations omitted) has described fibromyalgia as an "elusive and mysterious" disease that shares some features with chronic fatigue syndrome:

> Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.[3]

Although Aidinovski consulted Dr. Serushan several times in 1992, she did not see him again until 1995.

In the interim she continued to see internist Dr. Jorge Balandrin regularly. During the years up to and after the claimed May 1993 disability onset date, Dr. Balandrin's notes confirm Aidinovski's shoulder pain and fibromyalgia as well as anxiety, depression, fatigue, insomnia, hypothyroid and other medical ailments (R. 103–08, 170). Aidinovski consulted Dr. Balandrin at least once every few months during the time period covered by his records.

In November 1994 Aidinovski underwent two consultative evaluations at the request of the Social Security Administration ("SSA"). According to the psychiatrist who met with her, she had no abnormalities except chronic pain disorder (R. 117–19), while the internist who examined her noted mild tenderness and diminished motion in the left shoulder as well as a history of fibromyalgia and possible synovitis versus bursitis of the left shoulder (R. 121–22). In early 1995 Dr. Balandrin also submitted reports to SSA explaining his prior diagnoses of depression, anxiety, fatigue, left shoulder problems, hypothyroid, gastritis and fibrositis (R. 124–29, 173–78).

In April 1995 Aidinovski returned to rheumatologist Dr. Serushan. There she complained of generalized weakness, difficulty sleeping and pain in her shoulders, neck, hips, back, hands and feet (R. 157). Dr. Serushan's musculoskeletal examination revealed a painful range of motion in the left shoulder with rotator cuff tenderness. In addition, he found many trigger points in the trapezius area of the neck. As he summarized matters (R. 157):

> This is a very classic case of severe chronic fibrositis syndrome with left shoulder rotator cuff tendinitis. In the past, [Aidinovski] had extensive lavage of the left shoulder with some relief. At the present time, she is unable to work, and I believe she is disabled and she should be off work.

Accordingly he prescribed various medicines, but Aidinovski discontinued the pain medicine because it aggravated her gastritis (R. 156).

Aidinovski visited Dr. Serushan twice during the ensuing six months, and Dr. Serushan reported that Aidinovski's general pain

---

**3.** [Footnote by this Court] By chance this Court was very recently required to act in a factfinding capacity in a Federal Tort Claims Act case in which the apparently disproportionate damages suffered by the woman plaintiff from a slip and fall were directly traceable to the victim's fibromyalgia (*Blowers v. United States*, No. 97–979, Findings of Fact and Conclusions of Law (N.D.Ill. Nov. 20, 1998)). That decision, and particularly the deposition of a totally impartial doctor who was expert in the field, provided this Court with valuable insights into what has been a little understood—and in some quarters continues to be a questioned—ailment despite its wholly legitimate nature (see particularly the deposition referred to in *Blowers'* Findings 7 and 8).

condition was improving, with the exception of her left shoulder (R. 156, 158). In January 1996 Aidinovski again returned to Dr. Serushan with complaints of shoulder, neck and rib pain (R. 187). Dr. Serushan noted tenderness and muscle spasms. Aidinovski again returned in June 1996, describing epigastric pain (R. 186).[4]

Aidinovski's explanations of her ability to conduct her daily activities mirror much of what is contained in her medical records. She has consistently maintained that her pain and fatigue fluctuate rather unpredictably (R. 52, 214–15), so that her activities depend on how she feels on a particular day (R. 52), and so that some days are worse than others. On a bad day her pain and fatigue may prevent her from doing anything at all (R. 68, 218). On a better day she is able to do household chores for a few hours, although she may need to rest intermittently (R. 64, 219). Furthermore, her stomach problems prevent her from taking medications to relieve her pain (R. 70).

*Medical Assessment Reports*

Both of Aidinovski's regular physicians completed medical assessment reports evaluating her condition and her ability to do work-related activities. They too mirror what has been recounted in the preceding section.

Dr. Serushan filled out such a report in November 1995. He recorded his prior diagnoses of fibrositis syndrome and shoulder impingement syndrome and noted Aidinovski's chronic pain in the upper body, although he explained that his examinations revealed no functional loss except in the left shoulder (R. 153). He went on to state that Aidinovski will have chronic pain for many years

that will not physically impair her daily life but could prevent her from holding a steady job (R. 153, 155). By contrast, her fatigue would greatly interfere with her daily living (R. 155). Dr. Serushan found that Aidinovski could not stand or walk for as many as 6 hours out of an 8–hour workday[5] and that she could sit for roughly 3 to 4 uninterrupted hours in an 8–hour workday (R. 154). In any event he explained that she needs to lie down intermittently throughout the day because of her chronic pain. Finally, he stated that she could occasionally lift and carry 3 to 4 pounds but could not frequently lift or carry any weight (R. 154).[6]

Several months later, in February 1996, Dr. Balandrin completed the same form. He described Aidinovski's medical condition as including hypothyroidism, fibrositis, gastritis and depression (R. 167). He stated that her overall prognosis was good and that she should remain stable (R. 167), but that she complains of chronic fatigue and pain (R. 168). He further noted that she could stand or walk less than an hour at a time, and that she could sit for 1 to 2 hours at a time (R. 168). Dr. Balandrin said Aidinovski's lifting ability was 10 to 20 pounds occasionally and 5 pounds frequently, while her carrying ability was 5 to 10 pounds occasionally and less than 5 pounds frequently (R. 168). Finally, he also stated that fatigue might interfere with her daily activities, but he added that she was not complying with her thyroid medication at her last office visit (R. 169).

*Procedural History*

Aidinovski filed her application for disability benefits on October 18, 1994 (R. 28). After the SSA had denied her claim (R. 32) she requested reconsideration (R. 37), but that

---

**4.** That visit was not literally Aidinovski's final visit to Dr. Serushan, for she also saw him in November 1996 complaining of back and knee pain (R. 196), and the doctor then noted several trigger points in the neck and reaffirmed his diagnoses of fibromyalgia and chronic pain (R. 197). But this Court cannot rely on that evidence in reviewing the ALJ's decision, because it was never before the ALJ (see *Eads v. Secretary of HHS*, 983 F.2d 815, 817 (7th Cir.1993)).

**5.** Dr. Serushan was "not sure" just how many hours Aidinovski could do so in the 8–hour period.

**6.** By contrast with Dr. Serushan's specialty in rheumatology—the "relevant specialist" qualification for diagnosing and evaluating fibromyalgia, *Sarchet*, 78 F.3d at 307—the medical findings that ALJ Holtz relied on in finding Aidinovski's physical limitations to be far less (R. 14) were signed by a general practitioner (R. 140) and approved (R. 133) by a specialist in pediatrics and pediatric allergies (R. 147)! As in *Animal Farm*, it must be recognized by any objective observer that some specialists are more equal than others.

too was denied (R. 38). Aidinovski then successfully requested and received a hearing by an administrative law judge ("ALJ"). On July 16, 1996 (R. 41, 205) ALJ Christine Holtz found that Aidinovski was not disabled for the purposes of receiving Social Security benefits (R. 9–22). Next Aidinovski's request for review by the Appeals Council was denied on January 23, 1998 (R. 5–6). Aidinovski then filed this lawsuit.

*ALJ Decision and Standard of Review*

Aidinovski must suffer from a disability to be eligible for benefits. "Disability" is defined in pertinent part as the inability (Section 423(d)(1)(A)):

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months....

*Knight v. Chater,* 55 F.3d 309, 313 (7th Cir. 1995) (citations omitted) sets out the customary five-step inquiry prescribed by Reg. § 404.1520 for determining whether a claimant is disabled:

> (1) whether the claimant is currently employed;
>
> (2) whether the claimant has a severe impairment;
>
> (3) whether the claimant's impairment meets or equals one of the impairments listed by the SSA, see 20 C.F.R. § 404, Subpt. P, App. 1;
>
> (4) whether the claimant can perform her past work; and
>
> (5) whether the claimant is capable of performing work in the national economy. If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to SSA to establish that the claimant is capable of performing work in the national economy.

ALJ Holtz denied Aidinovski's claim at the final step of the analysis. Although she found that Aidinovski satisfied steps one, two and four, the ALJ held that Aidinovski did not meet step three and that the Commissioner had met his step five burden. On that inquiry as to whether Aidinovski was capable of performing work in the national economy, ALJ Holtz applied Aidinovski's vocational background and residual functional capacity to the Medical–Vocational Guidelines (Reg. § 404, Subpt.P, App.2) and found that she could perform a full range of light work (R. 14). As a consequence the ALJ held that Aidinovski was "not disabled" and was therefore ineligible for disability benefits. Because the Appeals Council denied Aidinovski's request for administrative review (R. 5), the ALJ's decision became the final decision of the Commissioner for review here (see, e.g., *Green v. Shalala,* 51 F.3d 96, 101 (7th Cir.1995)).

*Estok v. Apfel,* 152 F.3d 636, 638 (7th Cir.1998) has most recently reconfirmed in the fibromyalgia context that judicial review of the ALJ's factual determinations is limited to whether they were supported by substantial evidence in the record and that (quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971)):

> "Substantial evidence" has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Nonetheless, says *Sarchet,* 78 F.3d at 307 (citations omitted), a court "cannot uphold a decision by an administrative agency ... if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." By contrast, the ALJ's legal conclusions are reviewed de novo (*Dotson v. Shalala,* 1 F.3d 571, 575 (7th Cir.1993)).

*Aidinovski's Residual Functional Capacity ("RFC")*

ALJ Holtz' opinion focused on a determination of Aidinovski's RFC, one of the factors taken into account in deciding whether work that the claimant can perform is available in the national economy (other factors include age, education and past work experience) (see Reg. § 404.1520(f)(1)). ALJ Holtz found that Aidinovski had an RFC for un-

skilled light work[7] with no transferable skills from her prior work experience, and that she had a functional limitation from overhead lifting with the left arm (R. 14). ALJ Holtz qualified Aidinovski only for unskilled work because of her history of depression and anxiety (R. 15). But ALJ Holtz did not acknowledge any functional limitations caused by Aidinovski's fibromyalgia and chronic fatigue, for the ALJ did not find Aidinovski's complaints credible and gave little weight to the doctors' reports of a debilitating condition (R. 15–16).

Aidinovski faults the ALJ in three respects: her asserted misunderstanding of the nature of fibromyalgia, her assertedly improper and incorrect assessment of Aidinovski's credibility and her purported failure to give appropriate credit to the reports of Aidinovski's doctors. Although Aidinovski presents those challenges separately, so that this opinion will seek to address them individually, they essentially converge into a single issue: whether and how to credit Aidinovski's subjective complaints of pain and fatigue.

First, Aidinovski argues that ALJ Holtz did not understand fibromyalgia adequately enough to evaluate the disease's impact on Aidinovski's functional limitations. Aidinovski relies heavily on *Sarchet,* 78 F.3d at 307, which remanded that fibromyalgia-based disability case to the agency in material part because the ALJ there had demonstrated "a pervasive misunderstanding of the disease." As explained in *Sarchet, id.* at 306, fibromyalgia has very few objective symptoms except for the existence of tender spots that cause the patient pain when touched. Diagnosis often depends upon the patient's subjective reports of pain, poor sleep and fatigue in addition to the doctor's ruling out other possible causes of the symptoms (see *Merck Manual of Diagnosis and Therapy* 1370 (Robert Berkow et al. eds., 16th ed.1992)).

But in this instance ALJ Holtz did not dispute that Aidinovski has fibromyalgia, instead acknowledging that Aidinovski's impairment in that respect is severe (R. 12). Despite that the ALJ gave no credence to Aidinovski's subjective complaints of pain and fatigue in evaluating the possibility of functional limitations caused by Aidinovski's illness. That led to the determination that Aidinovski could do almost a full range of light work. It is therefore necessary to turn to Aidinovski's second argument and review ALJ Holtz' credibility determination, keeping in mind the elusive nature of Aidinovski's illness.

Courts will not disturb an ALJ's credibility determination unless it is "patently wrong" (*Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir.1995)). That deference is usually warranted because the ALJ is in the best position to judge the credibility of the claimant. Absolute deference, however, is not in order, for the ALJ must still provide an "accurate and logical bridge between the evidence and the result" (*Sarchet,* 78 F.3d at 307; see also the unpublished order in *Heldenbrand v. Chater,* No. 96–3971, 1997 WL 775098, at *2 (7th Cir. Dec. 15, 1997), reported in table at 132 F.3d 36, citing *Sarchet* ("We cannot sustain credibility findings based on incorrect information or illogical reasoning"[8])). Furthermore, both administrative regulations and case law require ALJs to explicate their reasoning fully, precluding them from rejecting evidence favor-

---

7. Light work is defined in the regulations as encompassing jobs that involve the lifting of no more than 20 pounds at a time, with frequent lifting or carrying of objects weighing up to 10 pounds (Reg. § 404.1567(b)). Such jobs also require either (1) a good deal of walking or standing or (2) sitting most of the time with some pushing and pulling of arm or leg controls (*id.*). To be considered capable of light work, a claimant must have the ability to do substantially all of those activities (*id.*). Furthermore, any claimant deemed capable of light work is also considered capable of sedentary work, which involves mostly sitting, only occasional walking and standing,

and lifting no more than 10 pounds at a time (*id.;* Reg. § 404.1567(a)).

8. This Court of course recognizes and honors the limitation on citing unpublished orders as precedent, as imposed by Seventh Circuit Rule 53(b)(2). But in this instance the choice was between (1) employing the just-quoted felicitous language as though this Court had created it and (2) giving credit where credit is due. And because the language does no more than to reflect common sense (rather than serving as precedent for some point of law), the latter course seemed the more honorable one.

able to the claimant without explaining (within reason) why they have done so (see *Young v. Secretary of HHS*, 957 F.2d 386, 393–94 (7th Cir.1992); Social Security Ruling ("SSR") [9] 96–7p).

Credibility determinations are the second step in a two-step process prescribed by the regulations for evaluating a claimant's request for disability benefits based on pain (Reg. § 404.1529(b) and (c); SSR 96–7p). First the ALJ assesses whether a medically determinable impairment exists—here, the shoulder problems and fibromyalgia from which ALJ Holtz found that Aidinovski suffers—that could reasonably be expected to produce the pain. Then the ALJ must evaluate the credibility of the claimant's allegations about the intensity and persistence of the pain. In doing so the ALJ should take into account several factors listed in Reg. § 404.1529(c) and SSR 96–7p, including the objective medical evidence; prior work record; daily activities; location, duration, frequency and intensity of pain; precipitating and aggravating factors; use of medication; other treatments and measures used to relieve pain; observation of testimonial evidence by the claimant; and the consistency of the claimant's statements. ALJs should consider all those factors, because SSR 96–7p confirms that "allegations concerning the intensity and persistence of pain or other symptoms may not be disregarded solely because they are not substantiated by objective medical evidence."

Here ALJ Holtz found that Aidinovski's subjective complaints were not credible, basing that decision primarily on the lack of objective evidence and on the inconsistency between Aidinovski's subjective complaints and the negative objective evidence (R. 15–16). Yet ALJ Holtz did not consider—or at least she did not discuss—the particularly subjective nature of fibromyalgia symptoms and their role in assessing Aidinovski's credibility. ALJ Holtz did not acknowledge even once that the disease raises uniquely challenging issues for a disability determination because the objective evidence in a fibromyalgia case generally does not substantiate the patient's potentially severe complaints (see *Sarchet*, 78 F.3d at 306).

■ By definition Aidinovski's fibromyalgia diagnosis means that in all likelihood her accounts of pain and fatigue will seem out of proportion with the available objective evidence. Although ALJ Holtz' opinion did not demonstrate the same egregious misunderstanding of the disease evidenced by the ALJ's opinion discussed in *Sarchet*, 78 F.3d at 307, nonetheless she did not appear to consider its peculiar characteristics at all in assessing Aidinovski's credibility. This is not to say that if ALJ Holtz had properly taken the unique nature of the disease into account she would necessarily have found Aidinovski disabled.[10] Instead it must be held that absent proper consideration of the subjective nature of the symptoms of that illness, the ALJ did not make an adequate credibility determination (and correspondingly did not engage in a proper assessment of Aidinovski's functional limitations).

Although remand is really called for on that basis alone, ALJ Holtz also made other errors in her credibility determination that buttress that result. To be sure, although ALJ Holtz relied primarily on the lack of objective evidence in her credibility assessment, she did also point to other factors. But in doing so ALJ Holtz addressed little of the evidence favorable to Aidinovski that had been proffered to the ALJ.

For example, ALJ Holtz purported to support her finding that Aidinovski lacked credibility by pointing out that Aidinovski took "no heavy duty pain medication" (R. 16), but she took no account of the uncontroverted fact that Aidinovski could not take such pain medicine due to her stomach problems. In like fashion ALJ Holtz cited what she labeled as Aidinovski's "very little" and "infrequent"

---

**9.** SSRs are opinions, orders, interpretations and statements of policy adopted by SSA. Once published, a ruling is binding on all components of SSA, including ALJs (see *Warmoth v. Bowen*, 798 F.2d 1109, 1111 n. 5 (7th Cir.1986) (per curiam)).

**10.** Indeed, while "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, most do not and the question is whether [the claimant] is one of the minority" (*Sarchet*, 78 F.3d at 307 (citations omitted)).

treatment as constituting evidence of Aidinovski's lack of credibility (R. 15). Yet that totally ignored—it was totally silent as to— the equally uncontroverted evidence that Aidinovski saw or spoke to a doctor a minimum of once every few months for years beginning in the late 1980s, and that she undertook some home exercise and medicinal treatments. Nor did ALJ Holtz address other evidence favorable to Aidinovski's credibility, such as her prior work record: Aidinovski worked steadily from 1982 (when she was just 17) until her claimed disability onset date in 1993, a time period that included the births of two of her children—after each of which she returned to work within a few months. And although this is not a classic instance of the forbidden practice of an ALJ's "playing doctor" (see, e.g., *Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996)) ALJ Holtz compounded her just-discussed failures by opting to credit the one-time observation of a general practitioner reviewed by a pediatric specialist over the long-term evaluations of a specialist in rheumatology as the basis for the ALJ's own RFC determination (see n. 6).

If the total evidence had been given balanced consideration, it might well have been said that substantial evidence in the record supported ALJ Holtz' credibility determination and her corresponding decision that Aidinovski's only functional limitation is that she can do no overhead lifting with her left arm.[11] Indeed, ALJ Holtz pointed to some of that evidence. But no balanced consideration was given—and that means that reconsideration of the case on remand, if it were to reach an adverse decision on the disability question, would have to explain (as ALJ Holtz did not) both (1) why the evidence favorable to Aidinovski is to be rejected and (2) how the uniquely subjective nature of Aidinovski's illness factors into the analysis.

Aidinovski's third challenge to ALJ Holtz's opinion is that she failed to accord sufficient weight to the reports of Drs. Serushan and Balandrin that their patient experienced severe pain and limitations in her daily life. In

deciding to accord little weight to those reports, ALJ Holtz again relied on the lack of objective medical evidence to substantiate Aidinovski's complaints of pain and fatigue (R. 16). She said that the physicians' reports reflected only Aidinovski's already discredited complaints and were not based on objective medical evidence.

That decision has the same flaw as the ALJ's credibility and functional limitation determinations: It does not take into account the unique nature of fibromyalgia. It is true that the various doctors who examined Aidinovski came to some differing conclusions regarding her precise functional limitations, and it is up to an ALJ to determine reasonably which to credit. But the medical evaluations based on Aidinovski's subjective complaints must also be considered in light of fibromyalgia's role in this case.

### Conclusion

ALJ Holtz' decision that Aidinovski has an RFC for unskilled light work was based in large part on her determination that Aidinovski's fibromyalgia-related pain and fatigue created no functional limitations. That assessment was in turn premised on a discounting of Aidinovski's credibility and of her doctors' reports. As discussed at length in this opinion, all of those findings were flawed because they ignored the uniquely subjective nature of fibromyalgia symptoms and the other significant evidence favorable to Aidinovski.

As neither party has demonstrated entitlement to a judgment as a matter of law, this Court is constrained to deny both motions for summary judgment. Aidinovski's alternative request for remand in light of this opinion, however, must be and is granted (as it was in *Sarchet* ).

Finally, and again as in *Sarchet,* 78 F.3d at 308, this Court urges SSA to transfer this case to another ALJ on remand. Because of the arcane nature of the disease involved, coupled with the necessarily partially subjective nature of the balancing process called for here, it would seem fairest to afford Aidinov-

---

11. For example, Aidinovski admits that her condition did improve in the 9 to 12 months before

the July 1996 administrative hearing (R. 219).

ski a review by an ALJ who would not pose the risk of being affected (even subliminally) by the need to reconsider and possibly reverse her own original adverse opinion. In that respect, it would also seem that the later evaluation by Dr. Serushan that was not considered the first time around (see n. 4) would also be grist for the decisional mill on remand.