Thomas **STEELE**, Plaintiff,

v.

**THE BOEING COMPANY and Aetna Life Insurance Company,**
Defendants.

No. Civ.A. 05–392.

United States District Court,
E.D. Pennsylvania.

Nov. 7, 2005.

---

Mark S. Pinnie, Barnard, Mezzanotte and Pinnie, Media, PA, for Plaintiff.

Kathryn M. Schilling, Elliott Reihner Siedzikowski & Egan PC, Blue Bell, PA, for Defendants.

### *MEMORANDUM*

ROBERT F. KELLY, Senior District Judge.

This case involves a claim for short-term disability benefits under a Boeing employee disability benefit plan ("the Plan") regulated by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001–1461. Defendant Aetna Life Insurance Company ("Aetna") denied Plaintiff Thomas Steele's ("Steele") claim after reviewing his medical record and determining that he did not meet the definition of disabled. The parties' cross-motions for summary judgment are presently before me. I conclude that Aetna's final decision to deny Steele short-term disability benefits was not arbitrary and capricious. For the following reasons, Aetna's motion for summary judgment is granted and Steele's motion for summary judgment is denied.

## I. BACKGROUND

### A. The Plan

Steele worked at the Boeing Corporation from May, 1985, until August 18, 2003. He worked as a logistics specialist. A logistics specialist at Boeing controls configuration and documentation of support parts and products. Steele was also required to review new designs with engineers, identify design change, and visit Boeing customer facilities. Steele used Boeing's computer system to do this, but also would hand-write much of his documentation. As a result of his job duties, Steele sat at a desk for the majority of the day.

As a Boeing employee, Steele participated in Boeing's disability benefits plan. The Plan was self-funded by Boeing. Aetna had no involvement with funding the short-term disability plan and was only responsible for claims administration. Aetna had sole discretion to decide Steele's claim for benefits. The summary plan description explains to employees that they are "eligible for a weekly benefit if you become totally disabled ... as a result of an accidental injury or illness while covered under this plan." (AETNA–100). The Plan defines "totally disabled" as follows:

> Totally Disabled means all of the following conditions apply to you: You are disabled as a result of an accidental injury or illness.... As a result, you are earning 80 percent or less of indexed predisability earnings.... Your accidental injury or illness prevents you from performing the material duties of your own occupation or other appropriate work Boeing makes available.

(AETNA–134, 171–74). The short-term disability plan also defines what a disability entails:

> You will be deemed to be disabled if you are not able, solely because of a disease or injury, to perform the material duties

of your own occupation. You will not be deemed to be performing the material duties of your own occupation if: you are performing some of the material duties of your own occupation; and solely due to disease or injury, your income is 80% or less of your predisability earnings.

(AETNA–75). Subject to the terms and limitations of the short-term disability plan, Steele was eligible to receive short-term disability payments for as long as he remained disabled up to a maximum of 25 weeks. If Steele remained disabled beyond 25 weeks, he would then seek continued benefits through Boeing's long-term disability plan.

### B. Steele's Medical History Prior to His Disability Benefits Application

The medical record indicates that Steele suffered from reflex sympathetic dystrophy or fibromyalgia. Steele's symptoms included severe pain in his joints, back and extremities, fatigue and depression. For over 20 years, Steele was treated by John Esterhai, a Board Certified Orthopaedic Surgeon and Professor at the University of Pennsylvania Medical Center. In 2003, Steele reported a great increase in pain and was treated by pain management specialist, Dr. Daniel Gruener, the President of the Greater Philadelphia Pain Society. Dr. Gruener also prescribed Neurotin, the Aliderom pain patch, Oxycontin, and Klonipin to treat Steele's neurological and physiological problems.

### C. Steele's Application for Disability Benefits and Aetna's Denial

Steele's last day of work at Boeing was August 18, 2003. He applied for and began receiving short-term disability benefits effective August 27, 2003. At that time, Aetna approved Steele's short-term disability benefits through December 16, 2003

and advised Steele that if he remained disabled beyond that date, he must provide Aetna with information regarding how his disability continued to affect his ability to work. In December 2003, Dr. Gruener provided a "Disability Attending Physician Statement" with "clinical findings of lower extremity pain, burning low back pain, elbow pain, fatigue and impaired concentration, and provided a diagnosis of Complex Regional Pain Syndrome ('CRPS'), a condition similar to the all over fatigue and pain of fibromyalgia." (Pl.'s Br. at 6). Dr. Gruener stated that Steele was completely disabled because he did not believe Steele could lift, sit, or stand for any meaningful period of time. Therefore, Dr. Gruener concluded Steele was incapable of sedentary activity and disabled.

On January 14, 2004, Aetna informed Steele that his short-term disability benefits would not be extended and were terminated, effective December 16, 2003. Aetna also rejected Steele's application for long-term disability benefits because he did not meet the prerequisite of receiving 25 weeks of short-term disability benefits. Aetna's medical consultant had found a lack of "indicators of functional impairment" and concluded that Steele's "medical records indicate [he] ha[s] the functional capacity to perform [his] own occupations." (AETNA171–74). Aetna's medical consultant noted that although he expected to find indices of "severe degenerative changes or cord compression requiring surgical intervention," "the physical exams in the medical records indicate no significantly diminished ROM, strength, or sensation" and that there were no abnormal laboratory results. (*Id.*).

On February 2, 2004, Steele submitted a letter from Dr. Esterhai with a request for reconsideration. Dr. Esterhai states that Steele's chronic thoracic spine pain worsened in 2003 and that Steele is unable to work. Dr. Esterhai also pointed out that

there is no diagnostic test for Steele's condition and that Steele would not show objective signs, such as spinal cord compression. Around this time, Steele also saw pain management specialist Dr. Mitchell Cohen from Thomas Jefferson Hospital. Dr. Cohen opined that Steele suffered from "a pain disorder associated with lower back pain, and a major depressive disorder". After considering this additional documentation on February 18, 2004, Aetna again rejected Steele's application for disability because there was no evidence to support "a severe impairment that would preclude [Steele] from returning to [his] usual job duties." (AETNA178–79).

In April 2004, Steele submitted additional medical evidence dated March 3, 2004 from Dr. Gruener. Dr. Gruener opined that Steele suffered from CRPS, but that his diagnostic studies could not confirm such a condition and that Steele was considered disabled from any type of work. Aetna's Disability Analyst rejected this evidence on June 9, 2004. The Disability Analyst whose identity was not given, but who Steele believes is Dr. Brent Burton, an occupational medicine physician, explained that a medical doctor had reviewed and analyzed the information Steele submitted. Aetna's reviewing doctor concluded:

[t]he diagnosis of fibromyalgia requires demonstration of tenderness to specific areas of the body with palpation. Nonetheless, a demonstration indicative of a diagnosis of fibromyalgia does not imply that impairment is present or that Mr. Steele would be unable to work. Impairment must be demonstrated on the basis of an observable deficit in function. In this case, no such loss of function has been demonstrated.

(AETNA181).

On June 25, 2004, Steele requested an explanation of the "scientific or clinical

judgment of [Aetna's reviewing doctor's determination] and copies of any specific rule, guideline or protocol relied upon in the adverse determination." (Pl.'s Br. at 10). When Aetna failed to reply, Steeled submitted a written request for an appeal that was undertaken by Aetna on August 11, 2004. As part of the appeals process, Aetna's Disability Appeals Analyst requested that another consulting physician, Rick Snyder, D.O., M.P.H., review the entire file. Although Dr. Snyder found that the file supported "the presence of chronic pain syndrome of a long standing nature" in Steele, it also stated that:

> Based on the medical data in the file and with a reasonable degree of medical certainty, no specific physical limitations would be supported. No restrictions would be supported that would preclude his previous functional duties on a full-time basis as there are no physical evaluations from July 2003 until March 2004 that support findings of impairment precluding the requirements of the job description provided.

(AETNA200–05). Dr. Snyder also found that the "diagnosis of CRPS is not supported by the medical data provided."[1] (AETNA204).

Based on Dr. Snyder's analysis and his own review of the file, Aetna's Disability Appeals Analyst upheld the termination of benefits in a letter to Steele dated October 6, 2004. The Administrator denied Steele's claim for short-term disability benefits for two similar, but different reasons. First, throughout the claims process, Aetna rejected Steele's claim because Steele failed to present objective evidence supporting his fibromyalgia or CRPS. Initially, in its January 14, 2004 letter, Aetna explained, "[g]iven the diagnosis of Reflex Sympathetic Dystrophy or Firbromyalgia to be of the severity to be considered a disability we would expect to find exam/test findings that indicate severe degenerative changes or cord compression requiring surgical intervention." (AETNA172). In its final denial of Steele's appeal, Aetna's administrator relied on Dr. Snyder, a consulting physician who reviewed Steele's medical record, to conclude that there was "no physical evaluations that support findings of impairment precluding the requirements on the job descriptions provided by Boeing." (AETNA207).

The second reason Aetna denied Steele's disability claim was based on Dr. Snyder's opinion that, although the medical record supported Steele's claim that he suffered from "chronic pain syndrome" or fibromyalgia for a long period of time, there was no medical data to support a "specific physical limitation" precluding Steele from working at Boeing on a full-time basis. Aetna's Plan Administrator interpreted both of Dr. Snyder's opinions as evidence that Steele had no evidentiary support for being disabled. In its October 6, 2004 denial of Steele's appeal, the Plan Administrator explains:

> Please understand that the presence of a medical diagnosis or condition alone is not sufficient evidence of a disability. It must be shown that a claimant's medical condition results in an impairment of such severity that they are prevented from performing the duties required by their own occupation for any employer. Such information could include evidence of a loss of physical functioning, such as the observational loss of range of mo-

---

1. Dr. Snyder only uses the term "fibromyalgia" in his introductory page that explains the various ailments Steele suffers from. In his conclusion section, he refers solely to "chronic pain syndrome" and makes no mention of fibromyalgia. By eliminating CRPS as not supported by the medical record, I assume his use of the term "chronic pain syndrome" is interchangeable for "fibromyalgia."

tion, strength, coordination, or other neurological deficit that would support Mr. Steele's physical inability to perform his work duties. In the absence of such evidence, Mr. Steele's claim of disability rests solely on his own subjective reports of debilitating pain for which no demonstrable cause has been identified. To qualify for benefits, Aetna must be provided with credible evidence of a significant functional impairment. Reported pain cannot be a reliable indicator of functional impairment, since perception of pain may be affected by individual tolerance, motivational or psychological factors. In the absence of significant corresponding pathology, the reporting of pain by itself cannot be the sole determinant in establishing disability. The medical information that has been submitted to us does not demonstrate that Mr. Steele had an impairment of such severity that he was totally disabled from his own occupation when his claim was closed.

(AETNA208).

Steele filed a complaint with this Court on January 28, 2005 claiming that Aetna and Boeing violated Section 502(a)(1) of ERISA.[2] 29 U.S.C. § 1132(a)(1)(B). The parties then filed cross-motions for summary judgment. Cross-motions are merely claims by each side that it alone is entitled to summary judgment; they do not constitute an agreement that if one is denied the other is necessarily granted, or that the losing party waives judicial consideration and determination of whether genuine issues of material fact exist. *Rains v. Cascade Industries, Inc.*, 402 F.2d 241, 245 (3d Cir.1968). If any such issue exists, then it must be disposed of at trial and not on summary judgment. *Id.*

In the present case, there are no genuine issues of material fact. Both parties agree on the relevant facts and refer to the same standardized record. Therefore, this case is properly decided as a matter of law. The only issue before me is whether, as a matter of law, Aetna's decision to deny Steele disability benefits was arbitrary and capricious. I hold that it was not.

## II. *STANDARD OF REVIEW*

Deciding the cross-motions for summary judgment requires me to consider two standards of review: the summary judgment standard pursuant to Federal Rule of Civil Procedure 56 and the arbitrary and capricious standard under ERISA. *Byrd v. Reliance Std. Life Ins. Co.*, No. 04–2339, 2004 WL 2823228, *2, 2004 U.S. Dist. LEXIS 24682, at *6 (E.D.Pa. Dec. 7, 2004).

### A. Summary Judgment Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is genu-

---

**2.** Section 502(a)(1) provides that "a civil action may be brought ... to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B)

ine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. A factual dispute is material only if it might affect the outcome of the suit under governing law. *Id.* at 248, 106 S.Ct. 2505.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56(e). Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion. *Williams v. Borough of W. Chester,* 891 F.2d 458, 460 (3d Cir.1989)(citing *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548 (1986)). Further, the non-moving party has the burden of producing evidence to establish prima facie each element of its claim. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548. If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper. *Id.* at 322, 106 S.Ct. 2548; *Wisniewski v. Johns–Manville Corp.,* 812 F.2d 81, 83 (3d Cir. 1987).

### B. ERISA Standard

Steele's allegation that Aetna's denial of his short-term disability benefits in violation of Section 502(a)(1) raises a separate standard of review under ERISA. Both parties agree that where, as here, a plan governed under ERISA provides the administrator with discretionary authority to determine benefit eligibility, I must review the determination under an arbitrary and capricious standard. *See e.g., Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 111–12, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Steele, however, argues that this standard of review should be the less deferential, "heightened arbitrary and capricious standard." Steele is incorrect.

Under the arbitrary and capricious standard, I may not reverse the administrator's decision denying disability benefits unless that decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Abnathya v. Hoffmann–LaRoche, Inc.,* 2 F.3d 40, 45 (3d Cir.1993). The scope of this review is narrow and I am not free to substitute my own judgment for that of Aetna's plan administrator in determining eligibility for plan benefits. *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 439 (3d Cir.1997). In short, the arbitrary and capricious standard of review provides an "uncommon privilege in the American legal system—a limited right to be wrong ... without being reversed." Maurice Rosenberg, *Judicial Discretion of the Trial Court: Viewed from Above,* 22 Syracuse L.Rev. 635, 649 (1971).

The "heightened arbitrary and capricious standard of review" is applicable where an insurance company determines the eligibility for benefits and also pays benefits out of its own funds. *Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 388 (3d Cir.2000). Courts presume a conflict of interest because the insurance company is presumed to have "an active incentive to deny close claims in order to keep costs down and keep themselves competitive so that companies will choose to use them as their insurers." *Id.* Therefore, where there is this conflict of interest on the part of administrators, I must review the denial of benefits under a "heightened arbitrary and capricious" standard. *Id.* at 387. However, since the short-term disability plan at issue was only administered by Aetna and self-funded by Boeing, Aetna's decision to terminate short-term disability benefits was free of a conflict of interests. Thus, the relationship between

Boeing and Aetna does not provide a basis for applying the heightened standard of review.

Although procedural problems and anomalies are also a basis for utilizing the heightened arbitrary and capricious standard of review, none exist here. *Id.* The record establishes that Aetna gave Steele ample opportunities to submit information in support of his claim and considered all of Steele's evidence when making its determination. In the absence of these anomalies, I shall review Aetna's decision under the arbitrary and capricious standard of review.

## III. *DISCUSSION*

The primary issue before me is whether Aetna acted arbitrarily and capriciously when it determined that Steele was not "Totally Disabled" as that term is defined by the Policy.[3] As stated above, under the arbitrary and capricious standard, I may not reverse the administrator's decision denying disability benefits unless that decision was "without reason, unsupported by substantial evidence[,] or erroneous as a matter of law." *Abnathya*, 2 F.3d at 45. "A decision is supported by substantial evidence if there is sufficient evidence for a reasonable person to agree with the decision." *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir.2000) (internal quotations and citation omitted).

The scope of this review is narrow and I am not free to substitute my own judgment for that of Aetna's Plan Administrator in determining eligibility for plan benefits. *Mitchell*, 113 F.3d at 439. At the outset of this discussion, Steele argues that Aetna's decision was not supported by substantial evidence. I disagree.

To determine whether the Plan Administrator's decision to deny Steele disability benefits was arbitrary and capricious, I begin by examining the Plan itself, since an ERISA plan administrator must "discharge his duties with respect to a plan ... in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of [ERISA]." 29 U.S.C. § 1104(a)(1)(D). The Plan provides that in order to be "totally disabled" for the short-term disability plan, the following conditions must be met:

- You are disabled as a result of accidental injury or illness (including a pregnancy-related condition).

- As a result, you are earning 80 percent or less of indexed predisability earnings (as defined on page 45 [of the Plan]).

- Your accidental injury or illness prevents you from performing the material duties of your own occupation or

---

3. Steele raises the preliminary issue of whether he is entitled solely to short-term disability benefits or both short-term and long-term disability benefits. Steele argues that he is entitled to both short-term and long-term benefits. He is incorrect. Steele received short-term disability benefits from August 27, 2003 through December 16, 2003. On January 14, 2004, he was notified that his benefits were terminated as of December 16, 2003. Boeing's long-term disability plan states that if Steele was receiving benefits under the short-term disability plan for 25 weeks and continued to be totally disabled, then Aetna would automatically review Steele's claim to deter-

mine if long-term disability benefits were appropriate. (AETNA100, 101, 104, 108). Both Steele and Aetna agree that Steele's short-term disability benefits were terminated prior to the 25 week limitation. In fact, Steele points out that the January 14, 2004 letter from Aetna marked the 20th week he was receiving benefits. (Pl's Reply at 2). Steele was not eligible for long-term disability benefits because his benefits were cut off before a determination of whether he was entitled to long-term disability benefits could be made as directed by the Plan. This case involves the sole determination of whether Steele is entitled to short-term disability benefits.

other appropriate work Boeing makes available. (AETNA134). Disability benefits under the Plan are not automatic, and Steele bore the burden of demonstrating that he qualified for benefits. (AETNA39, 76, 101, 123). Thus, the Plan required that Steele, in order to obtain short-term disability benefits, show that as of December 17, 2003, he was totally unable to perform the material duties of his occupation or other appropriate work Boeing made available.

To determine whether Steele has carried his burden, we look to the record as a whole. For this analysis I may only review the record that the administrator had at the time the final decision was made. *See Mitchell*, 113 F.3d at 440. The "whole" record consists of all the materials that were before Aetna at the time of its October 6, 2004 letter reaffirming the previous denials of Steele's claim. The evidence suggests that Steele suffered from the following medical conditions: fibromyalgia, complex regional pain syndrome ("CRPS"), major depression, pain disorder, a history of acne vulgaris, and a history of restless leg syndrome. Aetna does not dispute that the doctors who treated Steele unanimously concluded that he was disabled and likely to remain so. Although Steele's treating and consulting physicians consistently stated that Steele was disabled, they disagreed as to the cause of his disability. Dr. Esterhai, Dr. Gruener, and Dr. Cohen initially believed that Steele's fibromyalgia was the cause of his disability because Steele suffered from multiple pain trigger points, the tell-tale sign of fibromyalgia. However, in March of 2004, Drs. Gruener and Cohen changed their opinion and found that CRPS was the correct diagnosis even though Steele continued to have multiple trigger points and that he was unable to work. Therefore, while Steele's doctors are unanimous in their opinion that he is disabled, they differ as to the cause of his disability.

The issue then becomes whether Aetna's Plan Administrator had substantial evidence to reject Steele's claim. Steele asserts as a matter of law that Aetna's decision to deny his claim for short-term disability benefits was unsupported by the medical evidence in the administrative record. He claims that Aetna failed to properly consider the nature of fibromyalgia or "chronic pain syndrome." Steele also claims that the unanimous opinions of his treating physicians that he is disabled should be credited over Aetna's consulting physicians.

Aetna argues that it is entitled to summary judgment because its decision was supported by substantial evidence. Specifically, Aetna relies on Dr. Snyder's review of the medical record. Dr. Snyder concluded that although Steele suffered from "chronic pain syndrome" or fibromyalgia for an extended period of time, "no specific physical limitations would be supported" by the medical record and there was no reason why Steele would not be able to return to work on a full-time basis. Dr. Snyder also ruled out CRPS because it was not consistent with the medical record.

The outcome of this case is determined by whether the Aetna Plan Administrator's reliance on Dr. Snyder's opinion, as opposed to Steele's treating physicians, constitutes substantial evidence and a fair reading of the record. I hold that it does.

First and foremost, Aetna's Plan Administrator was not obligated to accept the opinions of Steele's treating physician. Steele is incorrect to the extent he argues that Aetna's denial of benefits was arbitrary and capricious because it credited the opinion of Dr. Snyder over the opinion of his own treating physicians. Aetna was not required to credit the opinions of Steele's treating physicians over that its own medical consultant. *See Black & Decker Disability Plan v. Nord*, 538 U.S.

822, 825, 123 S.Ct. 1965, 155 L.Ed.2d 1034 (2003) ("plan administrators are not obligated to accord special deference to the opinions of treating physicians"). Nor was Aetna obligated to have Dr. Snyder perform an exam of Steele, rather than relying on the written submissions of Steele's treating physicians. *See e.g., Klimas v. Conn. Gen. Life Ins. Co.*, Civ. No. 04–5408, 2005 WL 2994710, *2, 2005 U.S. Dist. LEXIS 18555, at *6 (E.D.Pa. Aug. 17, 2005) (citing *Leonardo–Barone v. Fortis Benefits Ins. Co.*, No. 99–6256, 2000 WL 33666891, *5, 2000 U.S. Dist LEXIS 19001, at *13 (E.D.Pa. Dec. 28, 2000)). Consequently, although Aetna credited Dr. Snyder's conclusions regarding Steele's CRPS over those of Drs. Gruener and Cohen, this decision did not render Aetna's denial of Steele's claim for short-term disability benefits arbitrary and capricious. *See, e.g., Schlegel v. Life Ins. Co. of North Am.*, 269 F.Supp.2d 612, 627–28 (E.D.Pa.2003) (reliance on conclusions of defendant's non-treating physicians over opinions of plaintiff's treating physicians does not render denial of disability benefits arbitrary and capricious under ERISA). Likewise, Aetna's decision to credit Dr. Snyder's finding that Steele's had "chronic pain syndrome" or fibromyalgia did not support any physical limitations preventing Steele from working on a full-time basis was not arbitrary or capricious.

■ ERISA, unlike the Social Security Act regulations, does not have a "treating physician rule." The "treating physician rule" was adopted by the Commissioner of the Social Security Administration "to control disability determinations by administrative law judges under the Social Security Act." *Nord*, 538 U.S. at 829, 123 S.Ct. 1965. The "treating physician rule" requires administrative law judges to, generally, give controlling weight to the findings and opinions of a treating physician who has treated a claimant applying for Social Security Act benefits. *Rutherford v.*

*Barnhart*, 399 F.3d 546, 552 (3d Cir.2005). In *Nord*, the United States Supreme Court reversed the United States Court of Appeals for the Ninth Circuit, which had held that ERISA plan administrators must follow the treating physician rule when making benefit determinations. *Nord*, 538 U.S. at 829, 123 S.Ct. 1965. The "critical differences between the Social Security disability program and ERISA benefit plans caution against importing a treating physician rule from the former area into the latter." *Id.* at 832–33, 123 S.Ct. 1965. The Social Security Act created a massive and obligatory nationwide benefits program with more than 2.5 million claims annually and uniformity is, therefore, required to ensure that it is administered correctly by administrative law judges. *Id.* at 833, 123 S.Ct. 1965 (citations omitted). ERISA, on the other hand, does not require employers to establish benefit plans for their employees; nor does ERISA mandate the kind of benefits an employer must provide if it has such a plan. *Id.* "Rather, employers have large leeway to design disability and other welfare plans as they see fit." *Id.* Therefore, courts do not require ERISA plan administrators to adopt a "treating physician rule."

This does not mean that there is no review of an administrator's decision if the administrator relies on a consulting physician. If the ERISA plan administrator's decision is arbitrary, as where the administrator "arbitrarily refuses to credit a claimant's reliable evidence," the administrator's decision fails the "fair review" requirement of the statute. *Id.* As the penultimate paragraph of *Nord* cautions:

Plan administrators, of course, may not arbitrarily refuse to credit a claimants reliable evidence, including the opinions of a treating physician. But, we hold, courts have no warrant to require administrators automatically to accord spe-

cial weight to the opinions of a claimant's physician; nor may courts impose on plan administrators a discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation.

*Id.* at 834, 123 S.Ct. 1965.

Removing a "treating physician rule" in the ERISA realm places even greater responsibility with Aetna's Plan Administrator to fairly evaluate Steele's medical record. Once again, a decision is arbitrary and capricious if it is not supported by substantial evidence. *Abnathya,* 2 F.3d at 45. However, as long as the record demonstrates that there is a reasonable basis for concluding that Steele's medical condition was not disabling, I must defer and Aetna's Plan Administrator's decision cannot be characterized as arbitrary.

Here, the administrator had conflicting reports from Steele's treating physician and Aetna's reviewing physicians. This is typical of the evidence used in disability determinations. Reasonable people can disagree on whether Steele was "disabled" for purposes of the ERISA plan. The Aetna Plan Administrator cannot be characterized as acting arbitrarily in taking the view that Steele was not disabled. The medical record contained conclusory statements from Steele's treating physicians that he was disabled despite the fact that they could not agree on whether he was disabled because of fibromyalgia or CRPS. The medical record also contained a thorough opinion from Dr. Snyder that noted Steele's disease, but also concluded that he was not entirely disabled from working by it.

The difference between disease and disability was well articulated by the Ninth Circuit in *Jordan* when it stated:

> That a person has a true medical diagnosis does not by itself establish disability. Medical treatises list medical conditions from amblyopia to zoolognia that do not necessarily prevent people from working. After a certain age, most people have pain, with or without palpation, in various parts of their body, and they often have other medical conditions. Sometimes their medical conditions are so severe that they cannot work; sometimes people are able to work despite their conditions; and sometimes people work to distract themselves from their conditions. Physicians have various criteria, some objective, some not, for evaluating how severe pain is and whether it is so severe as to be disabling. It is not for [a] ... court to decide that fibromyalgia should be treated by ERISA plan administrators as disabling in a particular case. That is a medical and administrative judgment committed to the discretion of the plan administrator based on a fair review of the evidence.

*See Jordan v. Northrop Grumman Corp. Welfare Benefit Plan,* 370 F.3d 869, 880 (9th Cir.2004).

Without deciding whether Steele was disabled, I must determine whether the record supports a reasonable basis for Aetna's Plan Administrator's conclusion that Steele was not disabled by his "chronic pain syndrome" or fibromyalgia. I find that there is. Simply put, Steele did not present much evidence that suggests he is unable to physically perform his job. He continued to drive, exercise, and perform physical therapy. This is not indicative of disabling pain. Dr. Snyder also noted that "[n]o restrictions would be supported that would preclude his previous functional duties on a full-time basis as there are no physical evaluations from July 2003 until March 2004 that support findings of impairment precluding the requirements of the job description provided." (AETNA204). Steele had ample opportunity to present such medical evidence, but failed to do so. Therefore, in this case, there was clearly adequate evidence that might

cause a reasonable person to agree with the denial of benefits. *See Courson*, 214 F.3d at 142.

But for Dr. Snyder's opinion based on his comprehensive review of the medical record, I would have had no choice but to hold that Aetna's Plan Administrator arbitrarily refused to credit Steele's treating physicians. From its first denial on January 14, 2004, until its final denial of Steele's appeal on October 6, 2004, Aetna's Plan Administrator cited the inappropriate reason that Steele's short-term disability benefits were denied because the treating physician's lacked objective medical evidence that showed Steele suffered from fibromyalgia or "chronic pain syndrome." In its January 14, 2004 letter, Aetna explained, "[g]iven the diagnosis of Reflex Sympathetic Dystrophy or Firbromyalgia to be of the severity to be considered a disability we would expect to find exam/test findings that indicate severe degenerative changes or cord compression requiring surgical intervention." (AETNA172). Dr. Snyder's evaluation also pointed to the lack of objective physical evidence of a disability. (AETNA207). This is a troubling request because fibromyalgia is a condition that cannot be proved objectively. "The American College of Rheumatology deems the diagnosis appropriate for an otherwise unexplained condition in which a patient complains of pain on the left side of the body, the right side of the body, above the waist, below the waist, and in the axial skeleton, and in at least 11 of 18 specified points when the examining physician palpates them with his thumb." *Jordan*, 370 F.3d at 877. By asking for objective evidence for a condition that cannot be proved objectively, Aetna was demanding what cannot exist.

Furthermore, Aetna's Plan Administrator's October 6, 2004 letter denying Steele's appeal incorrectly argues that even though Dr. Snyder acknowledged his fibromyalgia or "chronic pain syndrome," Aetna could not find Steele disabled based on such a finding. "Reported pain cannot be a reliable indicator of functional impairment, since perception of pain may be affected by individual tolerance, motivational, or psychological factors. In the absence of significant corresponding pathology, the reporting of pain by itself cannot be the sole determinant in establishing disability." (AETNA208). By requiring a "significant corresponding pathology" to accompany any reports of pain and three treating physician's determination that Steele was totally disabled, Aetna's Plan Administrator is predisposed to reject every disability claim that is based on fibromyalgia. Fibromyalgia is a difficult disease to diagnose due to the fact that "there are no laboratory tests for the presence or severity of fibromyalgia." *Sarchet v. Chater*, 78 F.3d 305, 306–07 (7th Cir.1996). "The principle symptoms are 'pain all over,' fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates it and other diseases of a rheumatic character—multiple tender spots." *Id.* Due to the subjective nature of fibromyalgia, it is easy to fake and difficult to determine whether Steele is one of the few who are totally disabled by a severe case of fibromyalgia. Claimants must be given an opportunity to prove that they are disabled by fibromyalgia. By requiring "significant corresponding pathology" to accompany diagnoses based on subjective complaints of pain, Aetna's Plan Administrator creates a standard that arbitrarily and capriciously eliminates all disability claims based on fibromyalgia.

Fortunately for Aetna, Dr. Snyder's opinion absolves its claims administrator's errors by providing substantial evidence to support the decision to deny Steele's short-term disability benefits. Therefore, Aetna's denial of Steele's disability benefits was not arbitrary and capricious. Sum-

mary judgment will be entered in favor of Aetna.[4]

An appropriate order follows.

### ORDER

**AND NOW**, this 7th day of November, 2005, upon consideration of Defendants' Motion for Summary Judgment (Doc. No. 13), the Response and Exhibits attached thereto, it is hereby **ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**, and judgment is entered in favor of defendants, The Boeing Company and Aetna Life Insurance Company, and against plaintiff, Thomas Steele.

---

4. Aetna argues that Boeing should not be a party to this civil action. As I reject Steele's claim for short-term disability benefits, I decline to address this issue.