**Marlin SARCHET, Plaintiff–Appellant,**

v.

**Shirley S. CHATER, Commissioner of Social Security, Defendant–Appellee.**

No. 95–3283.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 23, 1996.

Decided March 5, 1996.

David W. Sutterfield (argued), Sutterfield & Johnson, P.C., Effingham, IL, for Plaintiff–Appellant.

W. Charles Grace, Office of the United States Attorney, Criminal Division, Fairview Heights, IL, Myriah Miller (argued), Department of Health and Human Services, Region V, Social Security Administration, Chicago, IL, for Defendant–Appellee.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

POSNER, Chief Judge.

Marlin Sarchet was denied social security disability benefits, challenged the denial in the district court, lost, appeals. She is 42 years old, with a graduate equivalency degree, but she has not worked since 1978. She claims that in 1990 she became totally disabled as a consequence of fibromyalgia, also known as fibrositis—a common, but elusive and mysterious, disease, much like chronic fatigue syndrome, with which it shares a number of features. See Frederick Wolfe et al.; "The American College of Rheumatology 1990 Criteria for the Classification of Fibromyalgia: Report of the Multicenter Criteria Committee," 33 *Arthritis & Rheumatism* 160 (1990); Lawrence M. Tierney, Jr., Stephen J. McPhee & Maxine A. Papadakis, *Current Medical Diagnosis & Treatment 1995* 708–09 (1995). Its cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and—the only symptom that discriminates between it and other diseases of a rheumatic character—multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.

All these symptoms are easy to fake, although few applicants for disability benefits may yet be aware of the specific locations that if palpated will cause the patient who really has fibromyalgia to flinch. There is no serious doubt that Sarchet is afflicted with the disease but it is difficult to determine the severity of her condition because of the unavailability of objective clinical tests. Some people may have such a severe case of fibromyalgia as to be totally disabled from working, Michael Doherty & Adrian Jones, "Fibromyalgia Syndrome (ABC of Rheumatology)," 310 *British Med.J.* 386 (1995); *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 818 (6th Cir.1988) (per curiam), but most do not and the question is whether Sarchet is one of the minority.

 The record before the administrative law judge consisted of Sarchet's testimony plus the reports of several doctors who had examined her. The doctors agreed that she has a "frozen" left shoulder, which limits her ability to move her left arm. But they disagreed about the extent to which her ability to move around is limited by the effect of movement on her "pain all over" or by muscular weakness resulting from tenderness, fatigue, and limited mobility. Sarchet testified that her pain has virtually immobilized her but of course the administrative law judge did not have to believe her. If the administrative law judge believed the medical reports that found that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits. We cannot say that this combination of belief and disbelief would be unreasonable but we cannot uphold a decision by an administrative agency, any more than we can uphold a decision by a district court, if, while there is enough evidence in the record to support the decision, the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result. *Green v. Shalala,* 51 F.3d 96, 100–01 (7th Cir.1995); *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir.1994); *Zblewski v. Schweiker,* 732 F.2d 75, 78–79 (7th Cir.1984); *Cline v. Sullivan,* 939 F.2d 560, 563–69 (8th Cir.1991).

The administrative law judge's opinion contains a substantial number of illogical or erroneous statements that bear materially on her conclusion that Sarchet is not totally disabled. There is first of all a pervasive misunderstanding of the disease. The administrative law judge criticized Sarchet for having consulted a rheumatologist rather than an orthopedist, neurologist, or psychiatrist. Fibromyalgia is a rheumatic disease and the relevant specialist is a rheumatologist. The administrative law judge also depreciated the gravity of Sarchet's fibromyalgia because of the lack of any evidence of objectively discernible symptoms, such as a swelling of the joints. Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced. The administrative law judge also misunderstood the medical term "nonspecific" to mean unbelievable rather than not clearly related to a particular disease. Sarchet's puffy legs, for example, could have been the result of any one of several different conditions. That doesn't mean she doesn't have puffy legs.

Apart from a shaky understanding of the medical facts, the administrative law judge made errors in describing Sarchet's testimony. Sarchet did not testify that the severity of her pain was constant rather than aggravated by movement, but rather that she had some pain even when she did not move and worse pain when she did move. She also did not testify inconsistently (as the administrative law judge thought) with her testimony that she has to lie down frequently when she said that she has to sleep sitting up; she explained that she meant lying with her head at a 45 degree angle to the mattress. There was anyway no necessary inconsistency, since some people rest and sleep in different positions.

Also misunderstood was the testimony of the vocational expert, who testified that if one of the doctors was believed Sarchet *could not* do sedentary work, rather than, as the administrative law judge thought the vocational expert said, *could* do sedentary work; and testimony by a psychologist that

Sarchet had engaged in "symptom magnification," which referred to her psychiatric symptoms (she is depressive) rather than, as the administrative law judge believed, to her physical symptoms, such as pain and restricted mobility.

The administrative law judge made a number of unfounded sociological speculations which bespeak a lack of imagination concerning the lives of many of the people who apply for social security disability benefits. She said, for example, that Sarchet's "credibility is additionally undermined by her extremely poor work history. She has had less than $1,000 in earnings on which Social Security taxes have been paid in her entire life. Clearly she has had little connection to or interest in employment." Ignored is the long list of medical ailments from which Sarchet suffers and, so far as appears, has long suffered, over and above fibromyalgia. She has thickening of the vocal cords that makes her inaudible after speaking for an hour and a half or two hours. She has moderately severe emphysema. She is depressed, and takes antidepressants. She is emotionally unstable. She is obese. She has chronic heartburn, puffy legs, high blood pressure, arthritis, anxiety, allergies, pneumonitis, tachycardia, spondylosis. One of her kidneys and a part of her intestines have been removed. At the time of the hearing she was taking a remarkable number of pills, *including* Carafate, Verapamil–ER, Relafen, Acetaminophen, Benadryl, Tussi–Organidin elixir, Desyrel, Axid, and Lozol—and some of these medications had produced side effects that added to her medical woes. Despite all this, if she were a highly educated person she could do brain work between popping pills. She is not highly educated. Whether or not she is disabled within the necessarily restrictive meaning of the Social Security Act and its regulations, she is unemployable and has been for a long time.

The administrative law judge thought Sarchet's testimony further undermined by the fact that she did not apply for disability benefits until her son reached the age of 18 and was therefore no longer eligible for AFDC benefits. It is fortunate rather than otherwise that not every person in the United States who might be eligible to feed at the public trough does so at the first opportunity. Many people are ignorant of the full range of available benefits, or reluctant to undergo arduous administrative proceedings in which they are called liars, until desperation resulting from a personal crisis or as here the cut off of other public funds drives them to seek additional information or to overcome their reluctance to run the bureaucratic gauntlet.

The administrative law judge thought Sarchet's credibility further undermined by her testimony that she had suffered a heart attack during a treadmill test. There is no indication that Sarchet has ever had a myocardial infarction (the technical term for a heart attack) and the administrative law judge thought that Sarchet's describing her experience on the treadmill as a myocardial infarction showed her propensity to exaggerate her condition. But of course Sarchet did not use the term myocardial infarction and probably does not know what it means. She has her G.E.D., but left school after the tenth grade and was described by one of the doctors without contradiction as giving "the impression of coming from a background of limited social, cultural and economic experience." The treadmill test was stopped when Sarchet developed a very rapid heartbeat (tachycardia), which an unsophisticated person might think a form of heart attack. Nitroglycerine was administered, giving her immediate relief, which is evidence of coronary artery disease; and she was promptly hospitalized for catheterization, to determine whether she did have it. She had been told earlier that she might have suffered a "small MI," and, assuming the meaning of the term was explained to her, it would be natural for her to surmise that what happened on the treadmill was another heart attack.

The administrative law judge described Sarchet's testimony as "melodramatic" but did not explain this term. She may have meant it as a euphemism for exaggerated or even perjurious, or she may have been mistaking a cultural difference for a veracity difference. Her other sociological conjectures lend credence to the latter inference.

█ The system of judicial review reposes substantial discretion in the first-line

tribunal with regard to issues of fact and the application of law to fact. When the decision of that tribunal on matters of fact is unreliable because of serious mistakes or omissions, the reviewing court must reverse unless satisfied that no reasonable trier of fact could have come to a different conclusion, in which event a remand would be pointless. *O'Connor v. Sullivan*, 938 F.2d 70, 73–74 (7th Cir.1991); *Green v. Shalala, supra*, 51 F.3d at 101. We are not satisfied of that here. The case could easily have gone the other way, especially if the cumulative effect of Sarchet's substantiated ailments is considered, as the law permits. *Sullivan v. Zebley*, 493 U.S. 521, 531–33, 110 S.Ct. 885, 891–93, 107 L.Ed.2d 967 (1990); *Johnson v. Sullivan*, 922 F.2d 346, 350–52 (7th Cir.1990) (en banc).

So the Social Security Administration will have to take another look. We urge it to transfer the case to a different administrative law judge. The tone of the administrative law judge's opinion suggests that she may have an unshakable commitment to the denial of this applicant's claim. We are mindful that we have no general power comparable to our power in reviewing decisions by district judges, 7th Cir.R. 36, to order that a case decided by an administrative agency be sent back (if we reverse the decision) to a different administrative law judge. *Travis v. Sullivan*, 985 F.2d 919, 923–24 (7th Cir.1993). If there is sufficient evidence of bias to entitle the claimant to review by a different administrative law judge, as in *Ventura v. Shalala*, 55 F.3d 900, 904–05 (3d Cir.1995), then the transfer of the case to a different administrative law judge is an automatic consequence of reversal. But we do not think that that point was reached here, and we therefore do not order, but merely recommend, that the case be transferred.

The judgment of the district court is reversed and the case is remanded to the agency. *Green v. Shalala, supra*, 51 F.3d at 102; *Herron v. Shalala, supra*, 19 F.3d at 337.