Janice L. WINES, Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY, Defendant.

No. 5:01 CV 423.

United States District Court, N.D. Ohio, Eastern Division.

June 24, 2003.

Dianne R. Newman, Sternberg, Newman & Shifrin, Scott F. Smith, Akron, OH, for Plaintiff.

Michael A. Johnson, Office of the U.S. Attorney, Cleveland, OH, for Defendant.

### MEMORANDUM OPINION AND ORDER

BAUGHMAN, United States Magistrate Judge.

#### Introduction

This is an action for judicial review of the final decision of the Commissioner of

Social Security denying the application of the plaintiff, Janice L. Wines, for supplemental security income. The parties have consented to the jurisdiction of the Magistrate Judge.

The Administrative Law Judge ("ALJ"), whose decision became the final decision of the Commissioner, found that Wines had severe fibromyalgia, migraine headaches, irritable bowel syndrome, and, beginning January 5, 1995 and continuing, also affective disorder.[1] The ALJ made the following finding regarding Wines's residual functional capacity:

> The claimant has the residual functional capacity to perform sedentary work (20 CFR 416.967) with the mental, nonexertional limitations that she perform work involving no more than simple instructions, occasional contact with others and occasional changes in routine work settings (20 CFR 416.945).[2]

The ALJ determined that Wines could not perform her past relevant work as an assembler, packager and inspector, laundry attendant, home health aide, or bartender.[3]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity quoted above, the ALJ decided that a significant number of jobs existed nationally and locally that Wines could perform.[4] He, therefore, found Wines not under a disability.[5]

Wines asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, she challenges the residual functional capacity finding because the ALJ did not give proper weight to the opinions of her treating physicians and made an improper finding that her testimony was not entirely credible.

The Court concludes that, although substantial evidence does support the weight given to the opinion of Wines's treating physicians, the ALJ's credibility finding is inadequately articulated. The Court, therefore, must remand for further proceedings.

### Analysis

Wines claims disability on account of pain caused by her fibromyalgia condition. As previously stated, the ALJ accepted Wines's claim that she suffers from fibromyalgia and determined that her condition constituted a severe impairment.

### 1. Pain as the cause of disability

When a claimant presents pain as the cause of disability, the decision of the Sixth Circuit in *Duncan v. Secretary of Health and Human Services*[6] provides the proper analytical framework. The Court in *Duncan* established the following test:

> [t]here must be evidence of an underlying medical condition and (1) there must be objective medical evidence to confirm the severity of the alleged pain arising from that condition or (2) the objectively determined medical condition must be of a severity which can reasonably be expected to give rise to the alleged pain.[7]

Under the first prong of this test, the claimant must prove by objective medical evidence the existence of a medical condition as the cause for the pain. Once the claimant has identified that condition, then

1. Transcript ("Tr.") at 19.

2. *Id.* at 20.

3. *Id.*

4. *Id.* at 19, 20.

5. *Id.* at 20.

6. 801 F.2d 847 (6th Cir.1986).

7. *Duncan,* 801 F.2d at 853.

under the second prong he or she must satisfy one of two alternative tests—either that objective medical evidence confirms the severity of the alleged pain or that the medical condition is of such severity that the alleged pain can be reasonably expected to occur.[8]

■ Objective medical evidence of pain includes evidence of reduced joint motion, muscle spasm, sensory deficit, or motor disruption.[9] The determination of whether the condition is so severe that the alleged pain is reasonably expected to occur hinges on the assessment of the condition by medical professionals.[10] Both alternative tests focus on the claimant's "alleged pain." [11] Although the cases are not always clear on this point, the standard requires the ALJ to assume arguendo pain of the severity alleged by the claimant and then determine if objective medical evidence confirms that severity or if the medical condition is so bad that such severity can reasonably be expected.

■ A claimant's failure to meet the *Duncan* standard does not necessarily end the inquiry, however. As the Social Security Administration has recognized in a policy interpretation ruling on assessing claimant credibility,[12] in the absence of objective medical evidence sufficient to support a finding of disability, the claimant's statements about the severity of his or her symptoms will be considered with other relevant evidence in deciding disability:

Because symptoms, such as pain, sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone, the adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's statements if a disability determination or decision that is fully favorable to the individual cannot be made solely on the basis of objective medical evidence.[13]

The regulations also make the same point.

We must always attempt to obtain objective medical evidence and, when it is obtained, we will consider it in reaching a conclusion as to whether you are disabled. However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work ... solely because the available objective medical evidence does not substantiate your statements.[14]

■ Where the objective medical evidence does not substantiate the claimant's subjective complaints, the ALJ must pass on the credibility of the claimant in making those complaints.[15] The ALJ's findings as to credibility are entitled to deference because he has the opportunity to observe the claimant and assess her subjective complaints.[16]

---

**8.** *Felisky v. Bowen,* 35 F.3d 1027, 1039 (6th Cir.1994).

**9.** *Id.* at 1037 (quoting 20 C.F.R. 404.1529(c)(2)).

**10.** *Walters v. Comm'r of Social Security,* 127 F.3d 525, 531 (6th Cir.1997).

**11.** *Duncan,* 801 F.2d at 853.

**12.** Social Security Ruling (SSR) 96–7p, Evaluation of Symptoms in Disability Claims: As-

sessing the Credibility of an Individual's Statements, 61 Fed.Reg. 34483 (July 2, 1996).

**13.** *Id.* at 34484.

**14.** 20 C.F.R. 416.929(c)(2).

**15.** *Walters,* 127 F.3d at 531.

**16.** *Buxton,* 246 F.3d at 773.

■ The regulations set forth factors that the ALJ should consider in assessing credibility. These include the claimant's daily activities; the location, duration, frequency, and intensity of the pain; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication; and treatment or measures, other than medication, taken to relieve pain.[17] If the ALJ rejects the claimant's complaints as incredible, he must clearly state his reasons for doing so.[18]

## 2. Fibromyalgia and pain analysis

Fibromyalgia is an "elusive" and "mysterious" disease.[19] It has no known cause and no known cure.[20] Its symptoms include severe musculoskeletal pain,[21] stiffness,[22] fatigue,[23] and multiple acute tender spots at various fixed locations on the body.[24]

The presence of these tender spots are the primary diagnostic indicator of the disease.[25] There is no laboratory test for the disease's presence or severity.[26] Physical examinations usually yield normal findings in terms of full range of motion, no joint swelling, normal muscle strength, and normal neurological reactions.[27]

Because of the nature of fibromyalgia and its manifestations, application of the usual disability analysis is difficult. The first alternative test under the second prong of *Duncan*—medical evidence confirming the severity of the alleged pain—almost never exists.

Analysis is also hampered under the second alternative test—the medical condition is of such severity that the alleged pain can reasonably be expected to occur. In most cases, the analysis under this second alternative test will consist of diagnostic findings confirming the severity of the impairment and the opinion of a physician as to limitations that pain caused by such severity will impose. Since the presence and severity of fibromyalgia cannot be confirmed by diagnostic testing, the physician's opinion must necessarily depend upon an assessment of the patient's subjective complaints.[28]

This places a premium, therefore, in such cases on the assessment of the claimant's credibility. Although the treating physician's assessment can provide substantial input into this credibility determination, ultimately, the ALJ must decide, given the factors set out in the regulations, if the claimant's pain is so severe as to impose limitations rendering her disabled. For purposes of judicial review, the ALJ's articulation of the reasons supporting his credibility findings becomes very important.

## 3. Substantial evidence supports the ALJ's finding of the weight to be given to the opinions of the treating physicians.

■ The record contains the residual functional capacity assessments of two of

---

**17.** 20 C.F.R. 416.929(c)(3)(i)-(vi).

**18.** *Felisky,* 35 F.3d at 1036.

**19.** *Sarchet v. Chater,* 78 F.3d 305, 306 (7th Cir.1996).

**20.** *Id.*

**21.** *Preston v. Sec'y of Health and Human Servs.,* 854 F.2d 815, 817 (6th Cir.1988).

**22.** *Id.; Sarchet,* 78 F.3d at 306.

**23.** *Id.*

**24.** *Preston,* 854 F.2d at 817; *Sarchet,* 78 F.3d at 306.

**25.** *Id.*

**26.** *Sarchet,* 78 F.3d at 306.

**27.** *Preston,* 854 F.2d at 818.

**28.** *Sarchet,* 78 F.3d at 306.

Wines's treating physicians—Amy Pabst, M.D.[29] and Kristin Trump, M.D.[30]

At the outset, it should be noted that the ALJ did give substantial weight to the assessments of these treating physicians. Although the non-examining, agency physicians assessed Wines as capable of medium work,[31] the ALJ downgraded her residual functional capacity to sedentary.[32]

The residual functional capacity assessment of Dr. Pabst placed severe limitations on Wines's work-related capabilities. She assessed her as capable of standing or walking only one to two hours in an eight-hour day, one to two hours without interruption.[33] She opined that Wines could sit no more than two to three hours in an eight-hour day and only one to two hours without interruption.[34] She limited Wines's ability to lift and carry frequently up to five pounds, with the same limitation on occasional lifting.[35] Dr. Pabst assessed Wines's ability for pushing/pulling, bending, reaching, and handling as markedly limited.[36]

Dr. Pabst's treatment notes do not support the severe limitations imposed, however. These notes cover the time period from August 24, 1993 through August 17, 1994.[37] The notes contain frequent references to Wines's fibromyalgia as being well controlled or stable and also the assessment that Wines was doing fine.[38]

On March 12, 1998, Dr. Trump did a very detailed assessment of Wines's work-related capabilities. She summarized her observations dating back to September of 1995 and concluded that "I doubt that she would be able to return to a productive lifestyle with gainful employment."[39] She assessed Wines's ability to sit, stand, and walk at much less than two hours.[40] She opined that Wines cannot work an eight-hour day.[41] Dr. Trump rated Wines's ability to carry at a maximum of five pounds and then only rarely.[42]

The record also contains extensive treatment notes from Dr. Trump covering the period from September 29, 1995 through March 10, 1998.[43] Those notes evidence that Dr. Trump was constantly monitoring Wines's fibromyalgia condition and that she had prescribed multiple medications for pain.[44] From these notes, the conclusion is inescapable that the fibromyalgia condition had become more prominent and problematic in the time period covered by the notes than the time period when Wines was treated by Dr. Pabst.

Nevertheless, these notes can be reasonably interpreted to support the conclusion that Wines's condition did not result in the severe limitations imposed by Dr. Trump's residual functional capacity assessment. The notes evidence eighteen office visits over a two and one-half year period. Although the treatment notes for each visit

---

29. Tr. at 125–27.

30. *Id.* at 265–71.

31. *Id.* at 132–39.

32. *Id.* at 20.

33. *Id.* at 127.

34. *Id.*

35. *Id.*

36. *Id.*

37. *Id.* at 151–60.

38. *Id.* at 152, 153, 154, 156, 157, and 160.

39. *Id.* at 266.

40. *Id.* at 268.

41. *Id.*

42. *Id.* at 270.

43. *Id.* at 283–309.

44. *Id.*

note the fibromyalgia condition, fibromyalgia was the primary purpose for only five of those visits.[45] The remaining office visits appear to have other medical conditions as their primary focus.

This case presents a primary example of a record containing substantial evidence that will support two contrary conclusions. A reasonable person could conclude from Dr. Trump's treatment notes that Wines had a serious fibromyalgia condition that existed at a certain controlled level with periodic flare-ups. The condition as manifested in those notes, however, did not justify the extreme limitations on Wines's work-related capabilities imposed by Dr. Trump's assessment.

■ On the one hand, a reasonable person could also conclude from the notes that Wines had an ongoing, debilitating fibromyalgia condition, which Dr. Trump constantly monitored. Wines also had other medical conditions, some ongoing and others temporary, that from time to time would prompt her to see Dr. Trump and present those conditions for diagnosis and treatment as a matter of first order. A reasonable person could conclude that this did not detract from the accuracy of Dr. Trump's assessment, which placed severe limitations on Wines's work-related capabilities. Of course, when a record presents substantial evidence supporting two contrary conclusions, a reviewing court must affirm the finding of the Commissioner.[46] This Court, therefore, must affirm the weight given by the ALJ to the assessments of the two treating physicians in this record.

**4. The ALJ failed to properly articulate his reasons for finding Wines's subjective complaints of pain and her limitations not credible.**

■ As stated above, the applicable rulings and regulations recognize that objective medical evidence may not accurately indicate the severity of limitations caused by pain.[47] The ALJ must carefully consider the claimant's statements about pain and reach a conclusion about the credibility of those statements in deciding disability.[48]

■ This consideration takes on paramount importance in a fibromyalgia case because the symptoms of that impairment are entirely subjective.[49] If the ALJ finds the claimant not credible, he must clearly state his reasons for that finding.[50]

■ In light of the importance of Wines's credibility to the ultimate determination here, the ALJ's articulation of his reasons for finding her less than credible are inadequate. His specific discussion of credibility is limited to a single paragraph,[51] although that paragraph states that his consideration of factors bearing on credibility is scattered throughout his opinion.[52] The opinion does not, however, contain a detailed analysis of the daily activities as testified to by Wines at her hearings. Further, the ALJ's opinion makes repeated references to the lack of objective medical evidence as a negative for Wines.[53] Of course, the lack of such objective medical evidence is typical in a fibromyalgia case.[54]

**45.** *Id.* at 283, 284, 291, 302, and 307.

**46.** *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir.2001).

**47.** SSR 96–7p, 61 Fed.Reg. at 34484; 20 C.F.R. 416.929(c)(2).

**48.** *Id.*

**49.** *Sarchet*, 78 F.3d at 306.

**50.** *Felisky*, 35 F.3d at 1036.

**51.** Tr. at 17.

**52.** *Id.*

**53.** *Id.* at 15, 17.

**54.** *Preston*, 854 F.2d at 817–18.

In the ALJ's specific discussion of credibility, he notes that Wines has no complaints of adverse side effects of medication other than occasional upset stomach.[55] Such side effects are only one factor to be considered in the credibility formulation, however. The ALJ is also to consider the type, dosage, and effectiveness of pain medication taken.[56] The treatment notes evidence that her treating physician has prescribed various pain medications in an effort to find a regimen that would give Wines some relief, including Propulsid,[57] Flexeril,[58] Darvocet–N 100,[59] Corgard,[60] Restoril,[61] Phenergran,[62] Xanax Bentyl,[63] Norflex,[64] Phrenilin Forte,[65] Percocet,[66] Tylenol No. 3,[67] and Tylenol No. 2.[68]

In specifically discussing credibility, the other factor mentioned is Wines's continued ability to drive a motor vehicle.[69] This is not borne out on the record, however. At her first hearing before the ALJ in May of 1996, Wines testified that she only occasionally drives locally.[70] She testified that her husband drove her to the hearing and that she could not have driven herself because she could not hold her arms up on the steering wheel that long and because of heavy medication.[71] At the second hearing in July of 1998, she testified that she does not drive locally and has not driven for at least a year and a half.[72]

On balance, in this fibromyalgia case, the Court concludes that the ALJ did not satisfactorily articulate his reasons for finding Wines less than credible. The articulation provided does not constitute substantial evidence justifying the credibility finding. This case, therefore, must be remanded for reconsideration of Wines's credibility and for the determination of an onset date in the event that an ALJ decides that her pain was so severe as to render her disabled for some period of time.

## Conclusion

Based on the foregoing, the Court concludes that the ALJ's credibility finding is not supported by substantial evidence. The Court, therefore, hereby reverses the decision of the Commissioner to deny Wines supplemental security income and remands the case under sentence four of 42 U.S.C. § 405(g) for reconsideration of that credibility finding. On remand, should the ALJ find that the severity of Wines's pain rendered her disabled for some period of time, he should proceed to determine an onset date of such disability.

IT IS SO ORDERED.

**55.** Tr. at 17.

**56.** 20 C.F.R. 416.929(c)(3)(iv).

**57.** Tr. at 283.

**58.** *Id.*

**59.** *Id.* at 284.

**60.** *Id.* at 289.

**61.** *Id.*

**62.** *Id.*

**63.** *Id.*

**64.** *Id.*

**65.** *Id.*

**66.** *Id.* at 291.

**67.** *Id.* at 299.

**68.** *Id.*

**69.** *Id.* at 17.

**70.** *Id.* at 320.

**71.** *Id.* at 321.

**72.** *Id.* at 369.