Donna PROKOPICK, Appellant

v.

COMMISSIONER OF SOCIAL SECURITY.

No. 07–1553.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) March 3, 2008.

Filed: April 4, 2008.

Stephen D. Rhoades, Law Offices of Edward P. McNelis, Hazelton, PA, for Appellant.

Maija Pelly, Social Security Administration OGC/Region III, Philadelphia, PA, for Commissioner of Social Security.

Before: BARRY, JORDAN and HARDIMAN, Circuit Judges.

OPINION

BARRY, Circuit Judge.

Donna Prokopick appeals from an order of the District Court affirming the decision of the Commissioner of Social Security denying her disability insurance benefits. The District Court exercised jurisdiction pursuant to 42 U.S.C. § 405(g), and we have jurisdiction under 28 U.S.C. § 1291. We will affirm.

I.

Because we write primarily for the parties, we recite only those facts relevant to our disposition of the appeal.

Prokopick began experiencing abdominal pain of an unknown origin in the mid–1980's. She had several exploratory surgeries over the years, but they were all unsuccessful in eliminating her pain. She underwent one such surgery on September 27, 1999, during which the surgeons untwisted small bowel loops and removed a six-inch section of her small bowel. The day after that surgery, however, she went

into hypotensive shock as a result of internal bleeding. She underwent additional surgeries over the course of the next few days and, for a time, required a ventilator to maintain her breathing. Her condition eventually stabilized and she was discharged from the hospital approximately ten days after the initial surgery.

Prokopick did not feel well enough to return to her job as a unit clerk at a hospital following the September 1999 surgery. She attempted to work as a secretary at a doctor's office three days per week for a two-month period in the summer of 2000, but left due to chronic pain and fatigue. She filed an application for disability benefits on January 17, 2003, alleging disability as of September 27, 1999 due to chronic fatigue, fibromyalgia,[1] and abdominal pain.

An administrative law judge ("ALJ") conducted a hearing on March 3, 2004, at which he heard testimony from Prokopick; Dr. Leo Corazza, an impartial medical expert; and Francene Tearpock–Martini, a vocational expert. Prokopick testified that she has pain "all over" her body as a result of the fibromyalgia. She said that the near-constant pain is particularly hard to deal with because it makes it difficult for her to be active during the day and also makes it difficult for her to sleep at night. She stated, "[while] I was working three days out of the week, the next day I would—I'd be wiped out. I'd have to lay on the couch, go on to the recliner, put my legs up, lay with, with my legs up toward my belly because of the abdominal pain and I was very exhausted." (App. at A380.) She told the ALJ that she was taking Percocet and Darvocet to help ease her symptoms, but that the drugs make her groggy and constipated.

Prokopick submitted into evidence a residual functional capacity questionnaire completed by Dr. Eugene Gorski, her treating physician dating back to approximately 1996, which stated that she is only capable of sitting for 15 minutes at a time before she needs to stand up and that she is only capable of standing for between 15 and 20 minutes before she needs to sit down. Dr. Gorski checked a box on the form indicating that her condition prevents her from performing even a "low stress" job.

The ALJ evaluated her claim under the five-step process set forth in 20 C.F.R. § 404.1520 and concluded that the claim failed at step five based on his finding that Prokopick was capable of performing certain types of sedentary jobs that were available to her in large numbers in the national economy. Prokopick appealed the ALJ's denial to the District Court and the matter was referred to a magistrate judge for a report and recommendation ("R&R"). The magistrate judge issued an R&R that the matter be remanded to the Commissioner for further consideration of the medical evidence, determining that the ALJ had given undue weight to the testimony of Dr. Corazza, a non-treating physician, and insufficient weight to the opinion of Dr. Gorski, the treating physician. Neither party objected to the R&R and the

---

1. "Fibromyalgia syndrome is a common and chronic disorder characterized by widespread muscle pain, fatigue, and multiple tender points.... Tender points are specific places on the body—on the neck, shoulders, back, hips, and upper and lower extremities— where people with fibromyalgia feel pain in response to slight pressure." National Institute of Arthritis and Musculoskeletal and Skin Diseases, National Institutes of Health, Questions and Answers About Fibromyalgia, http://www.niams.nih.gov/ Health_Info/Fibromyalgia/default.asp (last visited March 17, 2008). Its cause is unknown and there is no cure. *Id.*

District Court adopted it in full on February 4, 2005.

The ALJ held a supplemental hearing on July 20, 2005. Prokopick testified that her symptoms were essentially the same as they were in 2004, but that she felt "a little worse" physically as far as the pain and exhaustion were concerned. (App. at A535.) The ALJ also heard testimony from Dr. John Menio, an independent medical expert, and Calvin Anderson, a vocational expert. Dr. Menio testified that he had reviewed all of Prokopick's medical records and believed that she was capable of performing sedentary work with a sit/stand option. He stated that fibromyalgia is "not disabling in the majority of the cases" and that "none of [his fibromyalgia] patients are severe enough to require them to stop working." (Id. at A527, A529.) He based his conclusion as to Prokopick's ability to work, in part, on the fact that some of his patients who are suffering from fibromyalgia have markedly higher CPK[2] levels than she has and are still capable of working.

The ALJ evaluated anew Prokopick's claim under the five-step process mandated by 20 C.F.R. § 404.1520 and once again denied her claim, finding her "testimony not fully credible to the extent that total disability is alleged" (App. at A397) and determining that she is capable of performing certain types of sedentary jobs that are available to her in large numbers in the national economy.[3] Prokopick ap-

pealed pursuant to 42 U.S.C. § 405(g) and the District Court again referred the matter to a magistrate judge. The magistrate judge again recommended remand, concluding that the ALJ's decision was not supported by substantial evidence, but the District Court declined to adopt the R & R and affirmed the final decision of the Commissioner. This timely appeal followed.

## II.

We apply the same standard of review used by the District Court: we exercise plenary review over the ALJ's application of the law, and review the ALJ's findings of fact to determine if they are supported by "substantial evidence." *Poulos v. Comm'r of Soc. Sec.,* 474 F.3d 88, 91 (3d Cir.2007). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It is less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart,* 364 F.3d 501, 503 (3d Cir.2004) (citations and quotations omitted). It is a highly deferential standard of review. *Id.*

## III.

Prokopick argues, first, that the ALJ failed to give appropriate weight to the medical opinion of her treating physician, Dr. Gorski, who stated that she is unable to perform even a low stress job. We disagree for several reasons. First, the ultimate determination of disability is a

---

2. Creatine Phosphokinase ("CPK") is "an enzyme found mainly in the heart, brain and skeletal muscle.... When the total CPK level is very high, it usually means there has been injury or stress to the heart, the brain, or muscle tissue." National Library of Medicine, National Institutes of Health, MedlinePlus Medical Encyclopedia: CPK, http://www.nlm.nih.gov/medlineplus/ency/article/003503.htm (last visited March 17, 2008).

3. The ALJ also found that her claim failed at step four because she had the residual functional capacity to perform her past work as a secretary/receptionist. Prokopick argues that this finding is at odds with the finding made by the ALJ in 2004 that she was *not* capable of performing her past work. We need not address this issue, however, because, as explained below, we conclude that the ALJ's finding at step five is supported by substantial evidence.

legal conclusion reserved exclusively for the ALJ. 20 C.F.R. § 404.1527(e)(1) & (3). While a treating physician's opinion is certainly evidence of a patient's ability to work, it is neither conclusive nor binding on the ALJ. Second, the ALJ was entitled to accord lesser weight to Dr. Gorski's opinion because it was provided in a checkbox form and he did not provide any reasons in support of his various conclusions. *Mason v. Shalala,* 994 F.2d 1058, 1065 (3d Cir.1993) (declaring that "[f]orm reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best"). Third, Dr. Gorski's answers on the form were internally inconsistent. Although he stated in response to one question that Prokopick was incapable of performing even a low stress job, he stated in response to another question that her pain was "seldom" severe enough to interfere with her attention and concentration. (App. at A352.)

Prokopick next contends that the ALJ should not have considered Dr. Menio's testimony because it was unreliable. We are similarly unpersuaded by this argument. We find little evidence in the record to support Prokopick's assertion that Dr. Menio gave undue weight to Dr. Corazza's testimony from the first hearing in forming his opinion in the matter. To the contrary, Dr. Menio specifically identified the reports of Drs. Gorski and Chikarmane when the ALJ asked him to identify which exhibits he had relied on in reaching his conclusions and, on questioning on the issue by Prokopick's attorney, expressly stated that his testimony was based on a review of "the entire medical records." (Id. at A522.) We also find it neither improper nor unusual for Dr. Menio to have compared Prokopick's symptoms with the symptoms of patients in his own practice who also have fibromyalgia.[4] Moreover, his statement that fibromyalgia is "not disabling in the majority of cases" (Id. at A527) appears to be a correct statement. *See, e.g., Sarchet v. Chater,* 78 F.3d 305, 307 (7th Cir.1996) (Posner, J.) (noting that "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working, but most do not").

Finally, we are satisfied that the ALJ properly evaluated Prokopick's subjective complaints of pain. Under the regulations, an ALJ may not base a finding of disability solely on a claimant's statements about disabling pain; the ALJ must evaluate "the extent to which [a claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a). An ALJ is permitted to reject a claimant's subjective testimony as long as he or she provides sufficient reasons for doing so. *Schaudeck v. Comm'r of Soc. Sec.,* 181 F.3d 429, 433 (3d Cir. 1999); S.S.R. 96–7p, 1996 WL 374186. Here, the ALJ considered Prokopick's subjective complaints together with the entire record, including all of the medical reports, and ultimately concurred with Dr. Menio's assessment that her condition was not severe enough to prevent her from performing certain types of sedentary work. The ALJ sufficiently explained his reasons for finding Prokopick's complaints of pain

---

4. On this record, we are unable to agree with Prokopick that it was "both medically and legally incorrect" for Dr. Menio to rely on her CPK levels in assessing the intensity of her pain. Prokopick's argument is premised entirely on the absence of fibromyalgia from a medical website listing common uses for CPK tests and is plainly insufficient to rebut the testimony of a medical expert. Furthermore, because we conclude that the ALJ was justified in relying on Dr. Menio's testimony, we need not address Prokopick's argument that the ALJ's improper reliance on Dr. Menio's testimony caused him to pose an improper hypothetical question to the vocational expert.

overstated, and we agree with the District Court that that conclusion is supported by substantial evidence.

## IV.

For the foregoing reasons, we will affirm the judgment of the District Court.