In the

# United States Court of Appeals

### For the Seventh Circuit

No. 22-2011

CHRISTINE SWIECICHOWSKI,

*Plaintiff-Appellant,*

*v.*

LELAND DUDEK,
Acting Commissioner of Social Security,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Eastern District of Wisconsin.
No. 2:21-cv-00249 — **Stephen C. Dries**, *Magistrate Judge.*

ARGUED APRIL 12, 2023 — DECIDED MARCH 31, 2025

Before SCUDDER, KIRSCH, and LEE, *Circuit Judges.*

LEE, *Circuit Judge.* Christine Swiecichowski challenges the denial of her claim for disability insurance benefits. On appeal, her arguments focus on the administrative law judge's ("ALJ") evaluation of her fibromyalgia. We appreciate the ALJ's detailed review and discussion of the record. Fibromyalgia, however, has unique properties, and it is unclear from the record whether the ALJ performed the analysis required

by the Social Security Administration's fibromyalgia guidance. We therefore vacate the judgment and remand for further proceedings.

I.

**A. Medical History**

Swiecichowski worked in a warehouse for over thirty years from 1987 until 2018. That year, she quit her job due to increasing symptoms and pain from her fibromyalgia, depression, issues with her right arm and wrist, and spinal disorders. Because Swiecichowski's appeal focuses on her fibromyalgia and fibromyalgic pain, we consider the medical records related to that issue.

In July 2018, Swiecichowski had two appointments with her primary care provider, Dr. Manisha Chaturvedi, during which she complained of chronic back and arm pain. Dr. Chaturvedi wrote a note for Swiecichowski to take two weeks off work because she was "unable to perform any [work] duties" and referred her to a pain management specialist. In late July 2018, Swiecichowski began seeing Dr. Hind Gautam, a pain management doctor, for treatment for her pain.

In early August 2018, Swiecichowski saw another doctor, Dr. Sany Khabbaz, for her chronic pain. This appears to be the first time that Swiecichowski was diagnosed with fibromyalgia. We surmise this from the doctor's note indicating that even though various medical tests, including electromyography ("EMG") and magnetic resonance imaging ("MRI"), were unable to identify the cause of Swiecichowski's pain, she still reported "significant pain throughout," was "sensitive" to the touch, and had "multiple areas of trigger points." This last statement is illuminating because the "trigger-point

assessment" is the only recognized test for diagnosing fibromyalgia.[1] Indeed, a couple of weeks later, Dr. Chaturvedi discussed the fibromyalgia diagnosis with Swiecichowski during her visit.

From September 2018 to May 2019, Swiecichowski visited Dr. Gautam regularly and received several prescriptions, injections, and referrals for physical therapy. But none of the treatments were effective, and she continued to experience severe pain.

In June 2019, Swiecichowski met with Karen Burr, a nurse practitioner, to evaluate her fibromyalgia. Nurse Burr administered the trigger-point test and noted that twelve out of the eighteen trigger points indicated positive for fibromyalgia. After this, Swiecichowski had a few more appointments with Dr. Chaturvedi and other physicians, but none related specifically to fibromyalgia.

**B. Administrative Proceedings**

In October 2018, Swiecichowski applied for disability benefits, alleging that she was disabled beginning on October 16, 2018.[2] In her application and at a hearing before the ALJ, Swiecichowski described how her impairments limited her ability to work. According to Swiecichowski, she had quit her warehouse job in July 2018 because of debilitating pain, and

---

[1] The test involves pressing down on eighteen fixed locations on the body. Generally, if the patient flinches at eleven or more locations, she is deemed to have fibromyalgia. *See Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017); *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996).

[2] Swiecichowski originally had alleged that her onset date was July 17, 2018, but later amended it.

she did not try to find a less physically demanding job, in large part because she could not sit or stand for long periods of time. Swiecichowski also attested that she could not lift or bend and that she needed to change positions throughout the day.

As for her ability to perform daily activities, Swiecichowski explained that she could perform chores on "good days" but needed "to take breaks" and "go sit down for a while." And she often depended on her partner or other family members to complete the chores. Swiecichowski noted too that she was able to feed and sometimes play with her dogs, but her wife was their primary caretaker. Furthermore, Swiecichowski stated, she was limited to cooking only simple meals (such as sandwiches, microwave dinners, or cereal), and she went shopping weekly but the duration of the trip would "depend[] on how [she was] feeling." Swiecichowski was able to drive but only drove to doctor's appointments or to visit her family, who lived five minutes away. Finally, Swiecichowski testified that she tried to go outside the house at least once per week, but this "depend[ed] on [her] pain level."

In June 2020, the ALJ denied Swiecichowski's application for disability benefits. The ALJ followed the agency's pre-scribed five-step process for determining whether a claimant is disabled: (1) whether she is employed; (2) whether she has a severe medically determinable impairment; (3) whether her impairment is one that the agency considers automatically disabling; (4) if not, whether she can perform her past relevant work; and (5) whether she is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

Between steps three and four, the ALJ determined Swiecichowski's residual functional capacity ("RFC"), which is defined as "the most physical and mental work the claimant can do on a sustained basis despite her limitations." *Mandrell v. Kijakazi*, 25 F.4th 514, 516 (7th Cir. 2022) (citing 20 C.F.R. § 404.1545(a)). The ALJ used this RFC in the evaluation of steps four and five as prescribed. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

As relevant here, the ALJ determined that Swiecichowski had multiple severe impairments—fibromyalgia, disorders of the spine, disorders of the right arm and wrist, and major depressive disorder. But, the ALJ concluded, none of these impairments were automatically disabling, either alone or in combination. Moreover, the ALJ found that Swiecichowski's "allegations of *disabling* symptoms and limitations are not fully consistent with the totality of the evidence."

In arriving at this conclusion, the ALJ discounted Swiecichowski's subjective complaints about her pain symptoms on several grounds. First, the ALJ pointed to the EMGs and MRIs of Swiecichowski's spine and right arm, which only showed "relatively mild" problems. The ALJ also cited the "mixed" clinical findings, which indicated that Swiecichowski experienced "severe pain at times but not consistently" and that she "frequently" showed "no acute distress, 5/5 strength in the upper and lower extremities, … intact [sensation] bilaterally to all modalities including pinprick, light touch, temperature and vibration, normal deep tendon reflexes, and normal gait." Also significant to the ALJ was Swiecichowski's admission of "being capable of preparing meals, performing housework, cleaning, doing dishes,

watching television, caring for pets, driving, and shopping despite her symptoms."

The ALJ also examined the medical opinion evidence about Swiecichowski's physical abilities, including opinions offered by two state agency consultants and two of Swiecichowski's providers. The former opined that Swiecichowski was able to perform light work, and the ALJ agreed (although he added a limitation related to use of her right upper extremity).[3] By contrast, the ALJ found the opinions of Swiecichowski's providers attesting to her more limited capabilities to have little support in the record.

As for Swiecichowski's RFC, the ALJ concluded that she could perform light work with additional restrictions for simple and repetitive work due to her depression and limitations on handling and fingering with her right arm. Although Swiecichowski could not perform her past work as a warehouse worker or forklift operator, the ALJ continued, she could still perform other jobs in the national economy. As a result, the ALJ determined that Swiecichowski was not disabled.

The Appeals Council denied Swiecichowski's request for review, making the ALJ's opinion the final and appealable decision by the Commissioner of Social Security. 20 C.F.R.

---

[3] Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). The only more limited form of work is sedentary work, which involves "lifting no more than 10 pounds at a time" and requires walking or standing only "occasionally." *Id*. § 404.1567(a).

§§ 404.955, 404.981. Swiecichowski then sought review in the district court, and the court affirmed the agency's decision. *See Swiecichowski v. Kijakazi*, No. 21-CV-249, 2022 WL 2069251 (E.D. Wis. May 27, 2022).

## II.

When a social security decision is appealed, "[w]e review the ALJ's 'not disabled' decision directly, without deferring to the district court's assessment." *Jeske v. Saul*, 955 F.3d 583, 587 (7th Cir. 2020). We will uphold the ALJ's decision so long as it is supported by substantial evidence, does not contain any legal errors, and "build[s] an accurate and logical bridge" from the evidence to its conclusion. *Id.* (citations omitted). "Substantial evidence" is a low threshold requiring only such evidence as "a reasonable mind might accept as adequate to support a conclusion." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

On appeal, Swiecichowski focuses on the ALJ's RFC determination.[4] She argues that, in crafting her RFC, the ALJ made several errors, including: (1) failing to assess her fibromyalgia in accordance with relevant agency guidance; (2) failing to account for the combined impact of her fibromyalgia and other

---

[4] In the district court, Swiecichowski also argued that the ALJ had failed to follow certain agency regulations at step three of the sequential process. But Swiecichowski's opening brief contains only a single sentence, unsupported by any relevant authority, about this issue. *Puffer v. Allstate Ins. Co.*, 675 F.3d 709, 718 (7th Cir. 2012) ("[E]ven arguments that have been raised may still be waived on appeal if they are underdeveloped, conclusory, or unsupported by law."). And, although Swiecichowski expands on this argument in her reply brief, arguments raised for the first time in reply are waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011).

physical impairments; (3) improperly assessing the opinions of the state agency physicians; and (4) improperly assessing the opinion of Nurse Burr. The Commissioner contends that all but the first argument are waived because Swiecichowski failed to raise them in the district court. We agree.

Even in social security cases, wherein we review the ALJ's underlying decision directly, a claimant opposing the decision must present whatever objections she may have to the district court or risk waiver on appeal. *See Jeske*, 955 F.3d at 597. Largely conceding the point, Swiecichowski argues that she at least has preserved her objection to the ALJ's treatment of Nurse Burr. And, in support, Swiecichowski cites to portions of the district court's opinion that mention Nurse Burr's medical evaluation. But, given Swiecichowski's failure to present this argument to the district court herself and the resulting inability of the Commissioner to respond, the district court's statements are insufficient to preserve the argument on appeal. Thus, we focus on the lone remaining issue— whether the ALJ's evaluation of Swiecichowski's fibromyalgia comports with agency guidance.

### A. The Agency's Fibromyalgia Guidance

Fibromyalgia is a "chronic health condition that causes pain all over the body and other symptoms." *Kennedy v. Lilly Extended Disability Plan*, 856 F.3d 1136, 1137 (7th Cir. 2017) (citation omitted). These symptoms include severe fatigue, sleep problems, and problems with memory or thinking clearly. *Id.* Fibromyalgia is notoriously difficult to assess because "its symptoms are entirely subjective." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996). Further complicating the matter, the severity of fibromyalgia pain "cannot be measured with objective tests aside from a trigger-point assessment." *Gerstner*

*v. Berryhill*, 879 F.3d 257, 264 (7th Cir. 2018); *accord Vanprooyen v. Berryhill*, 864 F.3d 567, 572 (7th Cir. 2017).

Given the difficulty of evaluating fibromyalgia, the Social Security Administration has issued guidance specific to this ailment: Social Security Ruling SSR 12-2p, 2012 WL 3104869 (July 25, 2012). *See Wilder v. Kijakazi*, 22 F.4th 644, 653 (7th Cir. 2022) ("Social Security Rulings lack the force and effect of law, but they are binding on ALJs.").

In relevant part, SSR 12-2p addresses how a claimant can establish fibromyalgia as a "medically determinable impairment," which is step two of the five-step sequential process described above. 2012 WL 3104869, at *1. To satisfy this step, the claimant must point to a diagnosis of fibromyalgia and provide evidence of certain diagnostic criteria. *Id.* at *2–3; *see Revels v. Berryhill*, 874 F.3d 648, 656–57 (9th Cir. 2017) (describing the diagnostic criteria). Here, the ALJ found that Swiecichowski's fibromyalgia was a severe medically determinable impairment. The only question was whether her fibromyalgia was sufficiently severe to be disabling. Fortunately, SSR 12-2p provides guidance on this question as well.

To determine the limitations associated with fibromyalgia, SSR 12-2p instructs ALJs to follow the normal two-step process for determining the claimant's RFC, which is found in SSR 16-3p, 82 Fed. Reg. 49462-03 (Oct. 25, 2017).[5] *See* SSR 12-2p, 2012 WL 3104869, at *5. First, the ALJ considers whether

---

[5] SSR 12-2p actually instructs ALJs to follow the agency's prior guidance on evaluating symptoms (called "SSR 96-7p"). But where, as here, the ALJ's ruling was issued on or after March 28, 2016, SSR 16-3p controls. *See Burmester v. Berryhill*, 920 F.3d 507, 510 n.1 (7th Cir. 2019); SSR 16-3p, 82 Fed. Reg. at 49462–63.

the underlying impairment "could reasonably be expected" to produce the claimant's alleged symptoms, including disabling pain. SSR 16-3p, 82 Fed. Reg. at 49463. Second, the ALJ evaluates "the intensity and persistence of those symptoms" to determine whether the claimant's ability to work is limited. *Id.* at 49464. In doing so, the ALJ must consider the objective medical evidence; the individual's subjective statements; information provided by medical sources; and the claimant's level of pain, medication, treatment, and daily activities. *Id.* at 49464–66; *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

SSR 12-2p also provides guidance on how to incorporate fibromyalgia into the RFC determination. One such guidance states that the agency will "consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p, 2012 WL 3104869, at *6. Additionally, the ALJ must be mindful that pain, fatigue, and other symptoms associated with fibromyalgia may result in limitations that should be incorporated into the RFC. *Id.*

**B. The ALJ's Subjective Symptoms Analysis**

When examining the clinical findings, the ALJ observed that Swiecichowski's physical exams, though "mixed," "frequently" showed "no acute distress"; normal strength, reflexes, and gait; and "intact" sensation. Swiecichowski contends that these observations violate SSR 12-2p because the guidance does not expressly list physical symptoms as factors relevant to whether fibromyalgia is a medically determinable impairment. *See* SSR 12-2p, 2012 WL 3104869. But her argument misunderstands how SSR 12-2p operates here.

Swiecichowski is correct that the factors SSR 12-2p lays out to determine whether a person has a medically determinable impairment of fibromyalgia describe the 11-point assessment and focus on manifestations of pain. *Id.* at \*\*2–3. But SSR 12-2P makes clear that, when assessing a claimant's residual functional capacity, the ALJ may consider "all relevant evidence in the case record." *Id.* at \*6. This makes sense because, unlike some other pain-causing disorders, fibromyalgia results in few physical manifestations. *See Revels*, 874 F.3d at 656 (explaining that fibromyalgia patients have normal muscle strength, sensory functions, reflexes, and joints); *cf. Sarchet*, 78 F.3d at 307 ("Since swelling of the joints is not a symptom of fibromyalgia, its absence is no more indicative that the patient's fibromyalgia is not disabling than the absence of headache is an indication that a patient's prostate cancer is not advanced.").

This does not mean, however, that clinical evidence is irrelevant in fibromyalgia cases. Once the claimant has established that her fibromyalgia is a medically determinable impairment, the ALJ still needs to resolve whether the severity of the resulting symptoms limits the claimant's ability to work; this is the heart of the RFC analysis. And physical examinations can help answer this question by revealing the claimant's ability to walk, move, and generally function.

Furthermore, as we have noted, in evaluating the impact of fibromyalgia as part of the RFC assessment, the ALJ must "consider a *longitudinal* record whenever possible because symptoms of FM [fibromyalgia] can wax and wane so that a person may have 'good days and bad days.'" SSR 12-2p, 2012 WL 3104869, at \*6 (emphasis added). And, although the rule does not define the term, "longitudinal" commonly means

"involving the repeated observation or examination of a set of subjects over time with respect to one or more study variables." Merriam-Webster's Collegiate Dictionary 734 (11th ed. 2020).

Here, the ALJ did not acknowledge the need to conduct a longitudinal review of Swiecichowski's pain symptoms. It is true that the ALJ found that Swiecichowski's clinical findings "frequently" indicated no "acute distress," strength in extremities, and other signs of normal function. But, when discussing the impacts of Swiecichowski's pain, the ALJ referenced only five medical visits that occurred on July 20, 2018; August 8, 2018; June 10, 2019; January 18, 2020; and April 6, 2020. And, from this, he concluded that "clinical findings have been mixed, indicating severe pain at times but not consistently."

But recall that manifestations of pain from fibromyalgia can "wax and wane" (in other words, be inconsistent). And the record indicates thirty additional medical visits between September 18, 2017, and April 19, 2020, during which Swiecichowski complained of limiting pain. For example, on July 2, 2018, she complained of chronic back pain and pain in her right elbow and hand during her visit with Dr. Chaturvedi. On August 17, 2018, she told an orthopedic physician that she had pain throughout her right arm. On August 20, 2018, she informed Dr. Chaturvedi that she suffered from multiple joint pain and chronic back pain, and they discussed her fibromyalgia diagnosis. On October 11, 2018, she again reported experiencing aches and pain. On November 30, 2018, a physical exam indicated chronic bilateral low back pain as well as "tenderness all over the body." On January 21, 2019, Swiecichowski reported to Dr. Gautam that she was suffering

from arm, back, hip, leg and neck pain. On March 11, 2019, she presented with pain in her back, right elbow, neck, and both legs. On September 20, 2019, an occupational therapist observed "symptoms consistent with fibromyalgia" and that she was struggling to sit, stand, or walk for extended periods on account of pain. On February 11, 2020, Swiecichowski reported to a physical therapist that she had ongoing neck pain.

To be clear, we are not saying that an ALJ must discuss every medical visit or piece of medical evidence when assessing the impact of fibromyalgic pain on a claimant's functional capacity. But, given the unique nature of fibromyalgia and the large number of medical visits here, it is not clear from this record whether the ALJ evaluated the medical reports of Swiecichowski's pain holistically over time, keeping in mind that the symptoms of fibromyalgia may manifest in an *inconsistent* fashion. As SSR 12-2p recognizes, such a longitudinal review is critical to forming the "logical bridge" between the medical records and the ALJ's conclusions regarding the impact of Swiecichowski's fibromyalgia on her functional capacity.[6]

Finally, the Commissioner argues that the ALJ's decision is supported by substantial evidence because the ALJ cited the "conservative treatment" received by Swiecichowski. In some

---

[6] The ALJ's reliance on "frequent" reports of "no acute distress" does little to satisfy this requirement. The record shows that the term "no acute distress" did not necessarily indicate the absence of fibromyalgic pain. Take, for example, the ALJ's citation to Swiecichowski's August 8, 2018, visit with Dr. Khabbaz. After noting that Swiecichowski was in "no acute distress," Dr. Khabbaz observed that Swiecichowski had "multiple areas of trigger points" and "significant pain throughout…. Whenever she is touched [s]he [is] sensitive."

cases, allegations of disabling pain can be discounted when a claimant's treatment consists only of injections and basic pain management. *See, e.g.*, *Prill v. Kijakazi*, 23 F.4th 738, 749 (7th Cir. 2022) (upholding the ALJ's reliance on the claimant's "conservative" treatment of "injections, orthotics, and physical therapy" to support the not disabled decision). *But see Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (rejecting the ALJ's reliance on "minimal treatment" for pain stemming from sciatica nerve pain, because "the treatment records are replete with notes that the pain medication was not helping" and "sciatica is not always susceptible to more severe treatments"). Here, however, the ALJ simply noted Swiecichowski's "conservative" treatment, seemingly as an afterthought, without providing further discussion or citation to the record. Such a cursory statement is insufficient to remedy the decision's shortcomings.

### III.

We appreciate the ALJ's thorough analysis of the medical records in this complicated case. The unique nature of fibromyalgia, however, requires a more holistic longitudinal review to evaluate the severity of a claimant's fibromyalgic pain and its impact on her ability to work. For the foregoing reasons, we VACATE the judgment affirming the denial of benefits and REMAND for further proceedings consistent with this opinion.

KIRSCH, *Circuit Judge*, dissenting. I agree with the majority's characterization of the relevant legal framework as well as its observation that the ALJ could have explained some of his reasoning more thoroughly. But I am not persuaded this is enough to overcome the deference we owe an ALJ's benefits determination. When reviewing an ALJ's finding for substantial evidence, our role is "extremely limited." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). We may not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute our own judgment for that of the Commissioner." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quotation omitted). Though not a rubber stamp, substantial evidence is "not a high threshold," *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022), and "we will reverse only if the record compels a contrary result," *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation omitted).

To be sure, the ALJ never directly acknowledged the importance of conducting a longitudinal review in fibromyalgia cases, but I am not convinced that he, in fact, failed to holistically consider evidence of how Swiecichowski's symptoms presented over time. Noting that medical exam results have "frequently" indicated that Swiecichowski is in "no acute distress" and possesses normal strength, sensation, reflexes, and gait, the ALJ ultimately characterized the "clinical findings" as "mixed, indicating severe pain at times but not consistently." The majority faults the ALJ for drawing this conclusion based on only five medical exams and suggests he gave insufficient attention to Swiecichowski's many complaints of pain. But it seems natural to me that a discussion of "clinical findings" will focus on the parts of the record that contain objective medical assessments rather than those documenting Swiecichowski's self-reported symptoms.

   Of course, the ALJ cannot ignore the longitudinal evidence with respect to Swiecichowski's subjective reports of pain. But I don't think he did. Citing a number of different medical visits spanning multiple years in the record, the ALJ acknowledged that Swiecichowski has complained of "neck and back pain," "right elbow and hand pain," "right elbow pain which radiates down on her forearm," "decreased grip strength and tremors," and general "body pain," and that she presented at a physical exam with "exquisite tenderness all over the back." The majority criticizes the ALJ's failure to mention additional medical visits during which Swiecichowski made similar complaints of limiting pain. But nearly half of the visits the majority discusses took place before October 16, 2018—the amended onset date of Swiecichowski's disability. While the ALJ was entitled to (and did) consider medical evidence before the date of onset, see *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998), I am hesitant to find fault with his decision to not cite even more of the pre-onset record. More broadly, I worry that the majority's standard for longitudinal analysis is overly demanding and implies the existence of some threshold amount of medical evidence that ALJs must consider without specifying where that line is.

   The ALJ's ultimate determination that Swiecichowski was capable of restricted light work was further supported by medical opinions from two state agency consultants, and the ALJ explained why he found these opinions more persuasive than those of Swiecichowski's providers. And, notably, the ALJ's evaluation of all the record evidence led him to conclude that Swiecichowski's residual functional capacity was actually more limited than the state agency consultants assessed it to be. Whether we would have weighed the evidence in the record differently or reached a different conclusion than

the ALJ is irrelevant; when reviewing for substantial evidence, we ask only whether the ALJ's conclusion was supported by "such relevant evidence as a reasonable mind might accept as adequate." *Martin v. Kijakazi*, 88 F.4th 726, 729 (7th Cir. 2023) (quotation omitted). In this case, I cannot say the ALJ wholly failed to consider the longitudinal record with respect to Swiecichowski's symptoms, nor that his decision lacked a "logical bridge between the evidence and the result." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014). The ALJ's explanation of his reasoning was certainly not perfect—but it need not be under our highly deferential standard of review. I respectfully dissent.